Yohe, Appellant, *v.* Lower Burrell.

24

Argued March 16, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert P. Crum,* with him *John T. Crum,* and *Crum and Crum,* for appellants.

*Irving M. Green,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, April 20, 1965:

In September 1953, the City of Lower Burrell, then a second class township, enacted an ordinance authorizing its supervisors to award exclusive contracts for garbage collection from dwellings in the community. However, no effort was made to enforce or administer that ordinance until after Lower Burrell had been incorporated as a third class city.[1] In the summer of 1964, six individuals, including appellant, were asked by the City to enter into three year contracts under which each would be granted the exclusive privilege to collect garbage in a specified district and to collect fees not to exceed a monthly maximum of $1.50 from each dweller serviced. Although no specific determination has been made of the total amount actually collectible from the dwellings in each district under each contract, it is understood that the gross receipts under each contract would certainly be greater than $1,000.

Paul T. Yohe, appellant, a garbage collector for several years within the City, refused to enter into the contract offered to him. As a resident and taxpayer of the City, he filed a complaint in equity, individually and on behalf of the taxpayers of Lower Burrell, seeking, inter alia, (1) to enjoin the awarding of contracts for the collection of garbage without competitive bidding, (2) to enjoin the carrying out of any contracts already executed without competitive bidding, (3) to enjoin any attempted interference with, or termination of, appellant's garbage collection business until proper contracts were awarded in compliance with the requirements of The Third Class City Code,[2] (4) an order com-

---

[1] Appellee was incorporated as a third class city in January 1959.

[2] Act of June 23, 1931, P. L. 932, as amended, 53 P.S. §§35101-39701.

pelling the City to advertise for competitive bidding on any contracts awarded for collection of garbage if the value of the service exceeds the sum of $1,000, and (5) an adjudication declaring the 1953 township ordinance contrary to the provisions of The Third Class City Code and, therefore, illegal and without force as an ordinance in the city of Lower Burrell.

The court below dismissed the complaint, holding that the bidding requirements of The Third Class City Code apply only in cases where a city will be expending public funds in sums greater than $1,000 and that in the present case such payments by the City were not involved.

The only issue which has been raised in this appeal[3] is whether a city of the third class may award exclusive contracts for the collection of garbage without first advertising for bids where each contract involves sums in excess of $1,000 to be paid, not from the city treasury, but directly by city residents. Section 2403 of The Third Class City Code[4] deals specifically with the power of a municipality to regulate and provide for the collection of garbage: "In addition to other powers granted by this act, the council of each city shall have power, by ordinance: . . . 6. Collection and Removal of Garbage.—To provide for and regulate the collection, removal and disposal of garbage, ashes and other waste or refuse material, *either by contract or by municipal conduct* of such *services,* and to impose and collect, by lien or otherwise, reasonable fees and charges therefor, and to prescribe fines and penalties for the violation of ordinances regulating such matters." (Emphasis supplied.)

It is evident from the language of §2403 that a third class city may regulate or provide for garbage collec-

---

[3] Although appellant's complaint requested further relief, we deal here only with the issue raised and decided below.

[4] Act of June 23, 1931, P. L. 932, §2403, 53 P.S. §37403.

tion either by contract or by municipal performance of such service.[5]

The relevant provision of the Code dealing with bidding requirements is §1901(b)[6] which provides: "All *services* and personal properties *required by any city,* or any department thereof, where the *amount exceeds the sum of one thousand dollars,* shall be furnished and performed under written contract, and the contract shall be awarded and given to the *lowest responsible bidder,* after advertising three times, each publication on a different day, in not more than two newspapers, in accord with the provisions of section one hundred and nine of this act, and the bids shall not be opened until at least ten days have elapsed after the first advertisement." (Emphasis supplied.)

Since the collection of garbage is referred to as a *service* under §2403 of the Code, §1901(b) clearly mandates competitive bidding where the total amount receivable under the contract exceeds $1,000.

The court below concluded, however, that in light of §1901(c),[7] the Act did not require the City to advertise for bids under the circumstances of the present case. Section 1901(c) directs: "The amount of the contract shall in all cases, whether of straight sale price, conditional sale, bailment lease, or otherwise, be the entire amount which the city pays to the successful bidder or his assigns in order to obtain the services or property or both, and shall not be construed to mean

---

[5] These are the only methods permitted by the Act. The Legislature provided that "it is the intention that this act shall furnish a *complete and exclusive* system for the government and regulation of cities of the third class." (Emphasis supplied.) Act of June 23, 1931, P. L. 932, §4701, added by Act of June 28, 1951, P. L. 662, §47.1, 53 P.S. §39701.

[6] Act of June 23, 1931, P. L. 932, §§1901, 1902, as amended, 53 P.S. §36901(b) (Supp. 1964).

[7] Act of June 23, 1931, P. L. 932, §§1901, 1902, as amended, 53 P.S. §36901(c) (Supp. 1964).

only the amount which is paid to acquire title or to receive any other particular benefit or benefits of the whole bargain."

We are of the opinion that the trial court placed unwarranted emphasis upon payment from the city treasury and reached a result which would substantially contradict or negate the obvious purpose to be served by the Act. Section 1901(c) is clearly directed against the avoidance of bidding requirements through the fragmentation by any device of the entire contractual amount into sums under $1,000. We are unable to discern any legislative intent in §1901(c) to limit the broad language of §1901(b) so as to exclude the contracts involved in the present case from the bidding requirements imposed therein on the ground that such contracts do not involve the expenditure of funds from the city treasury. It would be ironic indeed to construe a section so obviously intended to prevent circumvention of bidding requirements in a manner which would permit or encourage such evasion.

It is a frequently repeated rubric, scarcely needing repetition, that a statute must be construed to effect the intent of the Legislature. Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551. Bidding requirements "are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest." (Footnotes omitted.) 10 McQuillin, Municipal Corporations §29.29, at 266-67 (3d ed. 1950).

The need for bidding requirements is just as compelling in the instant case where the garbage collector

is compensated directly by the recipients of his service as it is when the recipients pay for service through the conduit of the municipal treasury. In each case, regardless of who makes the final payment, it is the taxpaying citizen who provides the necessary funds and whose interest must be protected. The provisions of The Third Class City Code in issue here were enacted to insure that protection. We cannot interpret those sections in a way which would substantially emasculate their protective objectives and thereby encourage the objectionable practices which the Act seeks to eliminate. The language of the Act compels the interpretation that competitive bidding is required on these contracts even though the money comes directly from the taxpayers rather than from the city treasury.

It has been argued that bidding deprives a city council of its discretion to evaluate the responsibility or competency of each applicant and forces a council to base its award upon how much a potential garbage collector asks for his services. This argument fails to appreciate the express statutory language providing that contracts "be awarded and given to the lowest *responsible* bidder"[8] and ignores the control which a city maintains over bidders through appropriate specifications, see *Book v. Hall,* 339 Pa. 470, 15 A. 2d 355 (1940), and through contractual provisions.

Decree reversed and case remanded for further proceedings consistent herewith. Costs upon appellee.

---

[8] Section 1901(b), supra at note 6. (Emphasis supplied.)