## Youngman Party v. Lycoming County Board of Elections

*Clyde E. Williamson,* for petitioner.

*Lester L. Greevy,* for respondents.

GREEVY, P. J., and WOOD, J., May 19, 1969.—In the 1967 General Election, the Youngman Party achieved the status of a political party in Lycoming County by polling over five percent "of the largest entire vote cast for any elected candidate": Pennsylvania Election Code Act of June 3, 1937, P. L. 1333, art. VIII, sec. 801; Act of July 28, 1941, P. L. 526, sec. 1, 25 PS §2831 b, hereinafter referred to as section 801.

In the Primary Election of 1968 the Youngman Party nominated a slate of candidates all of whom

were also nominated by either the Republican or Democratic Party. All Youngman Party nominees accepted the nominations and hence their names appeared on the general election ballot as candidates of the Youngman Party and of either the Republican or the Democratic Party.

On July 16, 1968, an amendment to section 1003 of the Election Code was approved: Act of 1937, supra, as amended 1963, P. L. 707, sec. 17; 1968 Act no. 175, sec. 1, hereinafter referred to as Act 175. Section (d) of Act 175, reads as follows: (The old law appears in parentheses and the new is italicized).

"Whenever any candidate shall receive more than one nomination for the same office, his name shall be printed once, and the names of each political party so nominating him shall be printed opposite the name of such candidate, arranged in the same order as candidates names are required to be arranged. At the right of (every party name) *all the party names* or appellation shall be a *single* square of sufficient size for the convenient insertion of a cross or check mark."

Thus the manner of designating nominations, on the general election ballot, by more than one political party was changed. Prior to the amendment, if a candidate for an office was nominated by two political parties, two squares were placed on the ballot, one after each party's name, thus enabling the election board to accurately and easily allocate the candidate's votes between the parties. Under the amendment, all of the parties nominating a particular candidate are to be grouped together so that one candidate shall have but one square opposite his name regardless of the number of parties which nominate him. This amendment became effective on September 15, 1968, and hence the ballot for the general election held on November 5, 1968, reflected the change.

As a result of this new format it was impossible to ascertain whether a vote was cast under the Youngman Party or under the other party which had nominated the same candidate. Thus the amended statute complicates the application of the five percent requirement of section 801. As a result, the Youngman Party seeks a declaratory judgment in its favor asking that Act 175 be declared unconstitutional or that the five percent requirement of section 801 be considered repealed by necessary implication, or that Act 175 "be construed to permit the Youngman Party to claim a hundred percent of the votes cast" for any candidate who had been nominated by it as well as by either the Republican or Democratic Party.

Before proceeding to discuss any of these alternatives we emphasize what has been termed "a frequently repeated rubric," that a statute must be construed to effect the intent of the legislature: Yohe v. Lower Burrell, 418 Pa. 23, 28. This rule is the "polestar for construction of a statute" and is the court's guide in construing the instant statute dealing with the format of ballots. See Clearview Bowling Center, Inc. v. Hanover Borough, 430 Pa. 579.

In ascertaining the intention of the legislature there is a presumption that a statute is constitutional: Act of May 28, 1937, P. L. 1019, art. IV, Sec. 52, 46 PS §552; see Sugar Notch Borough, 192 Pa. 349, as well as presumption that repeals by implication are not favored and will not be implied unless there be an irreconcilable conflict between the statutes embracing the same subject matter: Act of May 28, 1937, art. VII, sec. 91; 46 PS §591; see George v. Moore, 394 Pa. 419.

There appears to be no obstacle to an allocation to the Youngman Party of 100 percent of the votes cast for any candidate nominated by it as well as by another party. Historically, the controlling statute regulated

only the physical layout of the ballot and that is all it purports to do now. Apparently the legislature intended to change only the physical arrangement of the ballot, since it amended only the statute which deals with that particular point.

The basic reason for the statutory change appears to be a desire to provide safeguards to prevent voters from invalidating their own votes. Under the prior law, it was not uncommon for a voter to inadvertently vote twice for the same candidate, e.g., the voter would place his "X" opposite the Youngman Party block and again opposite either the Republican or Democratic block. Such a ballot was held to be void. The amendment makes this type of mistake impossible.

It may be argued that our construction encourages splinter parties and that such was not intended by the legislature. However, as previously stated, the historical purpose of the statute was to regulate the form of the ballot. Admittedly, under prior law, the ballot arrangement made it easy to determine for which party a vote was cast. However, it is evident to us that this was a matter of coincidence, the essential purpose of the enactment being to establish an effective means for the exercise of the voter's franchise. Certainly the legislature was aware of the effect of the language change on the allocation of votes among the political parties. However, as stated, the principal concern of the legislature was the prevention of void ballots, not the ease of allocating votes among parties.

As a practical matter, the Republican and Democratic Parties will receive sufficient straight ballots to prevent an adverse effect by application of our construction, at least as far as their existence is concerned. However, small parties, such as the Youngman Party, are not in this position. If the Youngman Party were forced to rely on straight ballots, its existence could not be maintained. Such a requirement would

afford greater importance and weight to a straight ballot than to one on which the vote was split. In addition to raising serious due process questions, this would be contrary to the rule that "Statutes are never presumed to make an innovation in the . . . prior-existing law beyond what is expressly declared in their provisions." See Holton Estate, 399 Pa. 241, 247.

We conclude that in order to give effect to the evident intent of the legislature and to prevent manifest prejudice, Act 175 must be construed to permit the Youngman Party to claim 100 percent of the votes cast for any candidate nominated by it even though nominated by another party.

The necessary parties being before the court and actual controversy existing, there being no other appropriate and available remedy and no facts being in dispute, judgment must be entered in favor of the plaintiff in accordance with the above conclusions, and we make the following

## ORDER

And now, May 19, 1969, it is ordered and directed that judgment be entered for plaintiff, and the Youngman Party be and hereby is permitted to claim 100 percent of the votes cast in Lycoming County for the nominees of the Youngman Party.