J. Robert Lynch, J.
Pursuant to CPLR article 78 the petitioner seeks to vacate the award of a contract by the respondent officials of Onondaga County to the respondent Interstate Traffic Equipment Co. (Interstate) for lack of competitive bidding *64 (General Municipal Law, § 103) and to enjoin the respondents from performance in furtherance of the contract.
The General Municipal Law (§ 103) requires competitive bidding for all contracts for public works involving an expenditure of more than $2,500 and all purchase contracts involving an expenditure of more than $1,000.
The transaction giving rise to this controversy had its beginning when members of the Onondaga County Legislature and the County Fire Co-ordinator became interested in acquiring a county-wide fire alarm reporting system. In essence this involves the county’s housing and manning a central control console, which is in reality a radio receiver which picks up alarm signals sent from any number of outlying call boxes which are push-button-activated radio transmitters. The Fire Co-ordinator sent letters of inquiry to a number of manufacturers and distributors, among whom were the petitioner and the respondent Interstate. Both expressed interest in doing business with the county.
Thereafter on September 16, 1971, Interstate submitted to the County Fire Co-ordinator a written proposal by which it agreed to supply to the county the central control console worth $35,000 on the understanding that the supplier would take an override of no more than $675 on each privately sold call box until it had made up the cost of the console. The proposal anticipated that no part of the transaction would become final — not the sale of any call box nor the furnishing of the console — until its cost had been realized and any excess so derived would accumulate toward the cost of other consoles to be supplied in turn to the county. It was expected that there would be unlimited possibilities for the sale of private call boxes — restaurants, nursing homes, hospitals, warehouses, manufacturing plants, shopping centers, anywhere that concern for fire protection would outweigh the cost of the call box. Interstate’s proposal also recited that the ‘1 County of Onondaga Department of Fire, Mutual Aid and Training will cooperate fully with Interstate Traffic in its marketing and survey effort ”.
The following day, September 17, the proposal was accepted by the signature of the respondent County Fire Co-ordinator. On the same day the Public Safety Committee of the County Legislature unanimously voted to accept the proposal, with the further directive that the “ County Attorney’s Office is to meet with representatives of Interstate Traffic Equipment, James Williams, Fire Coordinator, and T. Wallace to prepare agreement ”.
*65 Apparently no agreement was ever prepared, evidently for the same reason that this petition is opposed by the respondent county officials — it is their contention that the transaction between the county and Interstate is a “ conditional gift ’ ’, that it is not a contract and, therefore, is not subject to the General Municipal Law (§ 103). Both they and Interstate also argue that even if this be deemed a contract it would not be a subject for competitive bidding because there is no expenditure of public money involved.
To say that Interstate’s delivery of the console to the county is a gift which is conditioned upon its being paid for by others is to indulge in self contradiction. A gift by definition is a voluntary transfer of property without consideration or compensation. (Harris v. Clark, 3 N. Y. 93; Gray v. Barton, 55 N. Y. 68; McKenzie v. Harrison, 120 N. Y. 260.) Furthermore since a gift is voluntary it cannot be dependent upon an agreement (Pickslay v. Starr, 149 N. Y. 432).
The transaction between the county and Interstate has in it mutual consideration. Interstate agrees to provide the county with the console and the county agrees to house it and operate it. Interstate derives the benefit of its profit from the sale of the call boxes made possible by the county’s assumption of control of the console and it is even able to recoup the cost of the console. The county derives the benefit of fulfilling its desire for a county-wide fire alarm reporting system. An agreement to transfer title to the console for a consideration must be construed to be a contract for Interstate to sell and a contract for the county to purchase (Matter of Sears, Roebuck & Co. v. McGoldrick, 279 N. Y. 184). The fact that the consideration may be payable in services rather than money is immaterial (50 N. Y. Jur., Sales, § 58, citing Burnside & Co. v. Havener Securities Corp., 25 A D 2d 373).
In making ‘1 all purchase contracts involving an expenditure of more than one thousand dollars ” subject to competitive bidding, the wording of the statute itself provides no clue to whether the Legislature intended to subject to such bidding all purchase contracts in which the county is a party without regard to who makes the expenditure or only those purchase contracts in which the county is to expend over $1,000. Before taking up this problem we wish to observe that the county may be expending much more than $1,000 under this agreement. First, as its part of the deal, it has to house and man the console. What this will cost we are not told. (Whether or not a competitive bidder would agree to assume any part of this expense has not been *66 put to the test.) Secondly, it is anticipated that the county and other municipal bodies will themselves purchase call boxes. Without the override, each of these will cost from $1,525 to $1,825 under the agreement. (Again, how much lower would competitive bidding bring these figures?)
In order to meet the problem presented we shall assume however that the county is to spend no money under this contract. Even so, we must construe this agreement to be one which is authorized only after competitive bidding, because the only consideration to be served is the interest of property holders and taxpayers. ‘ ‘ The provisions of the statutes and ordinances of this State requiring competitive bidding in the letting of public contracts evince a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible price. In addition, the obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption. They ‘ are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest ’ (10 McQuillin, op. cit., § 29.29, p. 322; emphasis added).” (Jered Contr. Corp. v. New York City Tr. Auth., 22 N Y 2d 187, 192, 193.)
The respondent county officials are to be commended for their concern and their foresight in inaugurating what we are told is to be the first such county-wide alarm system in the State, and doing this in a field in which there are no legal precedents to guide them. We are constrained to hold, however, that where the cost of such system is, under the arrangement with the county, to be borne by members of the public, though not the public purse, such property holders and taxpayers are entitled to the assurance given by competitive bidding that they are paying the lowest possible price.
In a somewhat analogous situation (Yohe v. City of Lower Burrell, 418 Pa. 23), where a city without competitive bidding awarded contracts for the collection of garbage, the cost to be borne by the individual householders at a maximum of $1.50 a month, the Pennsylvania court reversed a lower court holding which had exempted the contracts from competitive bidding because the city was not spending any money. Citing statutory intention similar to that in New York, the higher court held that “ the need for [competitive] bidding requirements is just as compelling ’ ’ where the compensation is paid by the householder as it is when paid directly by the city. (418 Pa. 28.)
*67 The petitioner is entitled to an order vacating and setting aside the contract with the respondent Interstate and all acts taken pursuant thereto, and enjoining the respondents from performing any acts in furtherance of said contract.