## PA. ASSOCIATED BUILDERS AND CONTRACTORS, INC., Petitioner

v.

## COMMONWEALTH DEPARTMENT OF GENERAL SERVICES, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 5, 2006.
Decided May 18, 2006.

---

Roy A. Powell and John W. Boyle, Pittsburgh, for petitioner.

Elizabeth A. O'Reilly, Asst. Chief Counsel, Harrisburg and Iris S. Pincus, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a motion for partial summary judgment[1] filed by the Pennsylvania Associated Builders and Contractors, Inc. (ABC)[2] requesting this Court to determine that the Commonwealth of Pennsylvania, Department of General Services' (DGS) policy of using competitive sealed proposals, also referred to as request for proposals rather than competitive sealed bids, is illegal under the Commonwealth Procurement Code (Procurement Code).[3]

1.  ABC does not explain why this is only a partial motion for summary judgment. The only difference that we can discern from examining the motion and its petition for review is that ABC also asked for preliminary injunctive relief in its petition. See nt. 7.

2.  ABC is a Pennsylvania association comprised of general contractors and subcontrctors incorporated in and/or doing business throughout the Commonwealth of Pennsylvania. ABC members routinely submit bids for public construction contracts in the commonwealth.

3.  62 Pa.C.S. §§ 101–4509. The Procurement Code is based on the American Bar Association's "Model Procurement Code." The original bill proposing the establishment of the Procurement Code was developed by the Joint State Government Commission and the Task Force on Commonwealth Procurement Law in 1983. While the Procurement Code, under various bill numbers, was reintroduced during the time period from 1983 to 1992, it languished until it again received serious consideration in June 1992, when the Task Force on Government Service Efficiency made the adoption of the Procurement Code one of its goals. In 1994, as a result of public hearings concerning Senate Bill No. 1625 (the proposed Procurement Code), amendments were made to the proposed Procurement Code. In 1996, the Procurement Code re-surfaced as Senate Bill No. 1169. In January 1997, the Procurement Code was again introduced, this time as Senate Bill No. 5, with Senator Robert J. Thompson as the prime sponsor and as House Bill 923 with Representative David J. Steil as the prime sponsor.

In Pennsylvania, as in most states, the award of construction contracts for public buildings was almost always and still is the result of a competitive sealed bidding process, *see* Section 511 of the Procurement Code, 62 Pa.C.S. § 511,[4] and the award was and still is made to the lowest responsible bidder. *See* Section 512 of the Procurement Code, 62 Pa.C.S. § 512.[5] After the bids are received and opened, all the bidding documents are considered public records. *Vartan v. Department of General Services*, 121 Pa.Cmwlth. 470, 550 A.2d 1375 (1988).[6] On April 7, 2005, DGS changed that policy for certain construction contracts by issuing a policy determination authorizing the use of Request for Proposals (RFP) for awarding construction contracts to contractors under the Procurement Code. The policy determination stated that the use of an RFP would be for construction contracts on complex projects or projects with allocations exceeding $5,000,000, and would be utilized when the use of competitive sealed bidding was either not practicable nor advantageous to the Commonwealth.[7] Those contracted under that process would be awarded

4. 62 Pa.C.S. § 511 provides:

   Unless otherwise authorized by law, all Commonwealth agency contracts shall be awarded by competitive sealed bidding under section 512 (relating to competitive sealed bidding) except as provided in:

   Section 512.1 (relating to competitive electronic auction biddings)

   Section 513 (relating to competitive sealed proposals)

   Section 514 (relating to small procurements)

   Section 515 (relating to sole source procurement)

   Section 516 (relating to emergency procurements)

   Section 517 (relating to multiple awards)

   Section 518 (relating to competitive selection procedures for certain services)

   Section 519 (relating to selection procedure for insurance and notary bonds)

   Section 520 (relating to supplies manufactured and services performed by persons with disabilities)

   Section 905 (relating to procurement of design professional services)

5. Section 512(g) provides:

   (g) **Award.** The contract shall be awarded within 60 days of the bid opening by written notice to the lowest responsible bidder or all bids shall be rejected except as otherwise provided in this section.

6. The purpose of the General Assembly requiring competitive bidding is not just to obtain goods or construct services, but to ensure that the public has faith in its government:

   It is clear that the statutory requirements for competitive bidding .... do not exist solely to secure work or supplies at the lowest possible price, but also have the " 'purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts ... and are enacted ... not for the benefits or enrichment of bidders....' " *Yohe v. Lower Burrell*, 418 Pa. 23, 28, 208 A.2d 847, 850 (1965), adopting 10 McQuillan, Municipal Corporations s 29.29 (3rd ed.1950). The obvious intent of the applicable statute is thus also to " 'close, as far as possible, every avenue to favoritism and fraud in its varied forms.' " *Louchheim v. Philadelphia*, 218 Pa. 100, 66 A. 1121 (1907), quoting *Mazet v. City of Pittsburgh*, 137 Pa. 548, 20 A. 693 (1890). *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376, 379 (1979).

7. Specifically, the policy determination from DGS' Secretary stated:

   I authorize the use of the competitive sealed proposal process, as described in § 513 of the Commonwealth Procurement Code, to accomplish the Department's goal of improving upon timely delivery of quality multiple-prime construction projects by qualified contractors. The process should be considered for use on complex projects or projects with allocations exceeding $5,000,000.

   The Director of the Bureau of Engineering and Architecture shall submit any project that meets these criteria to the Deputy Secretary for Public Works for consideration. The Deputy Secretary shall make a written determination, as required by § 513 of the

based on the cost (60%), a technical score on competency of the contractor to perform the work (30%), and a disadvantaged business score (10%). A committee formed by DGS would award the contract. Unsuccessful proposers would be notified and debriefed as to their own proposal and its "relative rank and the final scoring process" and the successful proposer's total cost. DGS, however, under the policy, would "not disclose any information" regarding the content or evaluation of the contract awardee's proposal. (All quotes from the Process Guidelines, Exhibit 11.)

DGS promulgated the policy pursuant to Section 513 of the Procurement Code, 62 Pa.C.S. § 513, which provides the following:

> **Conditions for use.** When the contracting officer determines in writing that the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth, a contract may be entered into by competitive sealed proposals.

ABC then filed a petition for review requesting this Court to determine that Section 513 of the Procurement Code did not permit DGS to use RFP for construction contracts and to issue a permanent injunction enjoining DGS from using the RFP for construction contracts because DGS' policy determination violated the Pennsylvania Constitution, the Commonwealth Procurement Code, the Separations Act, the Commonwealth Documents Law, and DGS' own regulations. In response, DGS filed preliminary objections arguing that ABC lacked standing, failed to exhaust its administrative remedies and its petition failed to state a claim for injunctive relief. After we denied DGS' preliminary objections,[8] an answer was filed, and both parties filed cross-motions for summary judgment.[9] Both motions' outcomes depend on whether the exception found in Section 513 of the Procurement Code is applicable to construction contracts.

DGS argues that Section 513 of the Procurement Code applies to contracts for construction because the term "contract" as defined under Section 103 of the Procurement Code, 62 Pa.C.S. § 103, includes "construction" in the definition. Specifically, "contract" is defined as "a type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services *or construction* and executed by all parties in accordance with the act of October 15, 1980 (P.L. 950, No. 164), know as the Commonwealth Attorneys Act." (Emphasis added.) Because the definition of "contract" itself includes the term "construction," DGS argues that it follows any time the word "contract" is used in the Procurement Code, and it is intended by the General Assembly that construction contracts are included as well. Because the Procure-

Commonwealth Procurement Code, to use the competitive sealed proposal process if, in his or her opinion, the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth. The Department will create a standard Request for Proposal for Multiple Prime Contractors for Construction, along with standard Request for Proposal Guidelines. These documents may be modified with the approval of the Deputy Secretary for Public Works to address the unique circumstances of each project.

8. *See Pa. Associated Builders and Contractors, Inc. v. Commonwealth Department of General Services*, No. 526 M.D. Pa.Cmwlth.2005, filed February 23, 2006.

9. A motion for summary judgment may be granted only when there is no genuine issue of material fact as to a necessary element of a cause of action, and the moving party has established entitlement to judgment as a matter of law. *Pakett v. Phillies, L.P.*, 871 A.2d 304 (Pa.Cmwlth.2005).

ment Code defines contracts to include construction contracts, even though Section 513 of the Procurement Code does not specifically use the word "construction," it implicitly authorizes the use of the RFP process for construction contracts.

DGS acknowledges the Section 322(6) of the Procurement Code, 62 Pa.C.S. § 322(6),[10] requires that the provisions of the Separations Act[11] be complied with in awarding construction contracts, and that Act requires competitive bidding and separate awards of public contracts for plumbing, heating, ventilation and electrical work to the lowest responsible bidder. However, DGS argues that provision "must be reconciled with the overall body of law set forth in the numerous, explicit provisions of the Procurement Code and the plain legislative intent. When all of these provisions are read together, it is clear that while 'separate' multiple contracts for constructions were to be preserved, the new code also authorized alternative methods, especially the competitive proposal method, for construction contracts." (DGS' brief in support of cross-motion for partial summary judgment at 6.) For example, it relies on Section 517 of the Procurement Code[12] which allows an agency to use separate and multiple award contracts and select the contractor to furnish the supply, service or construction based upon the best value or return on investment. That

---

10. 62 Pa.C.S. § 322(6) provides:

The following procedure shall apply to construction to be completed by the department which costs more than the amount established by the department under section 514 (relating to small procurements) for construction procurement unless the work is to be done by Commonwealth agency employees or by inmates or patients of a Commonwealth agency institution:

\* \* \*

(6) For construction contracts where the total construction costs are less than $25,000, the department shall not be required to comply with the act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings," and the department may award such contracts in accordance with section 511. All projects equal to or exceeding $25,000 shall be subject to the act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings." Whenever the department enters into a single contract for a project, in the absence of good and sufficient reasons the contractor shall pay each subcontractor, within 15 days of receipt of payment from the department, an amount equal to the percentage of completion allowed to the contractor on the account of the subcontractor's work. The contractor shall also require the subcon-

tractor to make similar payments to his subcontractors.

11. Act of May 1, 1913, P.L. 155, *as amended,* 71 P.S. § 1618.

12. Section 517 of the Procurement Code, 62 Pa.C.S. § 517, provides:

§ 517 **Multiple Awards.**
(a) **Conditions for use.** Contracts may be entered into on a multiple award basis when the head of the purchasing agency determines that one or more of the following criteria is applicable:
(1) It is administratively or economically impractical *to develop or modify specifications* for a myriad of related supplies because of rapid technological changes.
(2) The subjective nature in the use of certain supplies and the fact that recognizing this need creates a more efficient use of the item.
(3) It is administratively or economically impractical to develop or modify specifications because of the heterogeneous nature of the product lines.
(4) There is a need for compatibility with *existing systems.*
(5) The agency should select the contractor to furnish the supply, service or **construction** based upon best value or return on investment.
(b) **Solicitation process.** Invitations to bid *or request for proposal* shall be issued for the supplies, services *or construction* to be purchased. (Emphasis added.)

section further provides that contracts shall be conducted through invitations to bid or requests for proposals for supplies, services or construction. 62 Pa.C.S. § 517(b). DGS also believes that the key to reconciling the Procurement Code and the Separations Act is that the language used in the Separations Act refers to awarding contracts to the lowest "bidder" whereas Section 513 of the Procurement Code references awarding contracts to the responsible "offeror." Because the language used in the Procurement Code is different from that in the Separations Act, DGS believes the legislature fully authorized the competitive proposal process for construction contracts.

In response, ABC concedes that the definition of "contract" under the Procurement Code includes "construction," but argues that despite that definition, the Procurement Code has exceptions, and that legislative history decidedly rejected the usage of "construction" contracts when it came to Section 513 of the Procurement Code. It explains that when the General Assembly intended the exceptions to apply to construction contracts, it expressly stated so by incorporating the term "construction" into the statute, and the word "construction" is not found in Section 513. For example, Section 515 of the Procurement Code provides that contracts under that section are to be awarded "for a sup-

ply, service *or construction.*" 62 Pa.C.S. § 515.[13]

As to DGS' argument regarding the Separations Act, ABC explains that the Procurement Code requires that all construction contracts in excess of $25,000 are subject to Section 1 of the Separations Act, 71 P.S. § 1618. Under the Separations Act, a contractor is required to take separate bids and award separate contracts to the lowest responsible bidder for each plumbing, heating, ventilation and electrical contract in the construction of any public building when the work exceeds $4,000. Because 62 Pa.C.S. § 322(6) requires compliance with the Separations Act, ABC argues that that means DGS must take separate competitively sealed bids and award separate contracts to the lowest responsible bidder.

Moreover, ABC argues that it was not the intent of the legislature to repeal the Separations Act's requirement to award construction contracts to the lowest responsible bidder as evidenced by the enactment of the Procurement Code and Section 6(d) of Act 57 of 1998, P.L. 358, the Act that established the Procurement Code, which provides: "Nothing in this act shall repeal, modify or supplant the following acts and parts of acts," and the very first act listed is the Separations Act with the provision "except as explicitly stated in Section 322(6) of the Procurement Code."[14] Therefore, it argues that all con-

---

**13.** Additionally, Section 515(1) provides that the sole source procurement may be permitted if "only a single contractor is capable of providing the supply, service *or construction;* Section 515(2) states that sole source procurement is permitted where a statute or regulations exempts the supply, service or *construction* from the competitive procedure; Section 515(3) provides that the total cost of the supply, service *or construction* is less than a specified amount; Section 514, 62 Pa.C.S. § 514, details the circumstances under which a contract for a supply or service *and construction* may be awarded for a small pro-

curement; Section 517, 62 Pa.C.S. § 517, notes that contracts may be awarded under this section to furnish the supply, service *or construction;* and Section 541, 62 Pa.C.S. § 541, provides that multi-term contracts are permitted for contracts for supplies, *construction* or services."

**14.** The only modification made by Section 322(6) is its application of the Separations Act to all projects equal to or exceeding $25,000 instead of the Separations Act's $4,000 threshold. *See* 62 Pa.C.S. § 322(6); Section 1 of the General Municipal Law, Act of May 1,

struction contracts in excess of $25,000 are subject to the Separations Act, and separate contracts must be issued to the lowest responsible bidder for each plumbing, heating, ventilation and electrical contract.

Not only is the use of competitive sealed proposals against the express instruction of the Procurement Code, ABC contends that several changes made to two different sections of the proposed Procurement Code contained in Senate Bill No. 1625, which did not pass, removed specific language allowing competitive sealed proposals from the enacted version of the Procurement Code. One of those provisions involved Section 513 of the Procurement Code, the very provision that DGS says gives it the authority to use construction proposals. At that time, in Senate Bill No. 1625, the proposed language of Section 513 was:

> § 513. Competitive sealed proposals.
>
> (a) Conditions for use.—When, under regulations promulgated by the policy office, the head of a purchasing agency or a designee above the level of the procurement officer determines in writing that the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth, a contract may be entered into by competitive sealed proposals. The policy office may provide by regulation that it is either not practicable or advantageous to the Commonwealth to procure specified types of supplies, services *or construction by competitive sealed bidding.* (Emphasis added.)

As enacted, though, in 1998, Section 513 did not include the last sentence that would have made it clear that construction contracts could have be entered into by competitive sealed proposals.

1913, P.L. 155, 53 P.S. § 1003. No other changes were made to the Separations Act by

The other provision that was changed was Section 902 of the proposed Procurement Code, Senate Bill No. 1625, which provided the following:

> § 902. Selection of method of **construction contracting.**
>
> **Construction contracts shall be awarded by competitive sealed bidding under section 512 (relating to competitive sealed bidding) or by competitive sealed proposals under section 513 (relating to competitive sealed proposals).** (Emphasis added.)

Once the Procurement Code was enacted, the language in the proposed Section 902 was *totally deleted* from the actual Procurement Act of 1998. (Section 902 now deals with "Bid or proposal security.") Based on this evidence and because Section 513 does not include the term "construction," ABC argues that the removal of that language conclusively establishes that the General Assembly did not intend construction contracts to be included as part of the waiver provision contained in Section 513.

Finally, ABC contends not only does the language of the statute and the legislative history support that construction contracts were not intended by the General Assembly to be competitive sealed proposals, but that legislative debates surrounding the enactment of the Procurement Code indicate that the award of construction contracts were to be made to the lowest responsible bidder and not through a subjective process. ABC first refers us to the 1998 debate on the third consideration and final passage of the Procurement Code where Senators Armstrong and Thompson, the prime sponsors, discussed the importance

the legislature.

of a contractor being the lowest responsible bidder on *all* contracts, including construction contracts, stating:

> Senator ARMSTRONG. Mr. President, under page 41, section 515, line 28, it says, "It is in the best interest of the Commonwealth. The written determination authorizing sole source procurement shall be included in the contract title." I just want to make sure we do not get caught up in some legalese, that this does not override the lowest responsible contractor, whether it be union or nonunion. I just want to make sure it is always the lowest responsible contractor in any major contract that would receive that bid.
>
> Senator THOMPSON. Mr. President, it would not and these would be for small, very small contracts as well, and there will be printed regulations, as there will be printed regulations throughout the bill which would govern those provisions.
>
> Senator ARMSTRONG. Mr. President, so the gentleman sees no threat that they could pick and choose anybody at all? The gentleman sees no threat that someone over in the department could pick and choose who would get the bid? These contracts have to go to the lowest responsible contractor?
>
> Senator THOMPSON. Mr. President, the lowest responsible proposal at this time, yes.
>
> Senator ARMSTRONG. All right, Mr. President. I have no further questions.[15]

(SB 5 at 1475.)

Taking the language of the Bill, together with language of the statute and the legislative history, we agree with ABC that the General Assembly did not intend to allow construction contracts to be let by a proposal process. While "contract" as defined in 62 Pa.C.S. § 103 includes "construction" contracts within that definition, that definition is not preclusive because within the Procurement Code that definition is not always used to include construction contracts. For example, in Section 517 of the Act, which allows for multiple contracts to be awarded in certain instances by a request for a proposal process, it specifically mentions construction contracts as falling within the authorization contained in that provision. *See also* nt. 12. More importantly, the use of that definition of "contract" in Section 513 was essentially vitiated by the emphatic incorporation of the Separations Act into the Procurement Code by 62 Pa.C.S. § 322(6), and to emphasize that it still applied, the repealer section, Section 6(d) of Act 57 of 1998, P.L. 358, provided that nothing in the Procurement Code should be deemed to amend, modify, supplant or repeal the Separations Act. The only way that we could interpret Section 513 as DGS suggests—that it gives discretion to allow for sealed requests for proposed construction contracts—would be to hold that the Procurement Code modifies the Separations Act which the General Assembly specifically provided in the repealer clause was not its intent.

Finally, to interpret Section 513 of the Procurement Code to include construction contracts would have us ignore the legislative history of the Procurement Code. The 1994 Senate Bill No. 1625 which specifically included construction contracts in Section 513 was omitted in the final bill that was passed, and the language in Section 902 that would have further authorized the construction contract was totally omitted from the enacted version of the Procurement Code. Both of the provisions removed from Senate Bill No. 1625 that were

---

**15.** This discussion does not involve 62 Pa.C.S. § 513, but 62 Pa.C.S. § 515.

removed from the finally enacted version of the Procurement Code were also part of the American Bar Association's Model Procurement Code which the Commonwealth Procurement Code substantially tracks. We must assume that the General Assembly made those changes for a reason, and from what was removed, the obvious conclusion is that it did not intend construction contracts to be included in the type of contracts that could be let by request for sealed proposals under the exception contained in Section 513 of the Act. Based on all of that, we find that it is clear that Section 513 is not applicable to construction contracts.[16]

Accordingly, because ABC has proven that it is entitled to judgment as a matter of law, ABC's motion for partial summary judgment is granted and DGS' motion for partial summary judgment is denied. DGS is enjoined from utilizing the competitive sealed proposal bidding process on any future construction project under the policy determination of April 7, 2005, and the guidelines issued thereunder.

### ORDER

AND NOW, this *18th* day of *May*, 2006, it is hereby Ordered that the motion for partial summary judgment filed by PA. Associated Builders and Contractors, Inc. is granted, and the motion for partial summary judgment filed by the Commonwealth of Pennsylvania, Department of General Services, is denied. The Commonwealth of Pennsylvania, Department of General Services is further enjoined from utilizing the competitive sealed proposal bidding process on any future construction project under the Policy Determination of April 7, 2005, and the guidelines issued thereunder.

DISSENTING OPINION BY President Judge COLINS.

I respectfully dissent. Article 3, Section 22 of the Pennsylvania Constitution, entitled "State purchases," states in relevant part,

> The General Assembly shall maintain by law a system of competitive bidding under which all purchases of materials, printing, supplies or other personal property used by the government of this Commonwealth shall so far as practicable be made.

I agree with the Department of General Services (DGS) that this constitutional provision does not apply to construction contracts.

Subject to additional definitions contained in subsequent provisions, and unless the context clearly indicates otherwise, the word "contract" includes construction contracts. "Contract" is "[a] type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction...." 62 Pa.C.S. § 103. Chapter 5 of the Code, which governs selection and contract formation, contains no alternative definition for "contract."

---

**16.** ABC also raised in its motion for summary judgment these additional issues: whether DGS' policy determination violates Article III, Section 22 of the Pennsylvania Constitution which requires that all contracts be competitively bid; whether DGS' policy determination violates the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102–1602, because it was a "binding norm" and should have been adopted as regulation; if we found Section 513 permitted DGS to use competitive sealed proposals for construction contracts, whether DGS' policy determination violated due process and equal protection because an unsuccessful bidder could not challenge the award to the successful proposal because the reason for awarding the successful bid would not be disclosed rendering the Procurement Code bid protest procedures meaningless. Based on how we have decided this issue, we need not address those issues.

Section 511 of the Procurement Code sets forth the methods of source selection, calling for competitive sealed bidding unless otherwise authorized.

Unless otherwise authorized by law, all Commonwealth agency contracts shall be awarded by competitive sealed bidding under section 512(relating to competitive sealed bidding) except as provided in:

Section 512.1 (relating to competitive electronic auction bidding).

Section 513 (relating to competitive sealed proposals).

Section 514 (relating to small procurements).

Section 515 (relating to sole source procurement).

Section 516 (relating to emergency procurement.)

Section 517 (relating to multiple awards).

Section 518 (relating to competitive selection procedures for certain services).

Section 519 (relating to selection procedure for insurance and notary bonds).

Section 520 (relating to supplies manufactured and services performed by persons with disabilities).

Section 905 (relating to procurement of design professional services).

62 Pa.C.S. § 511. The applicable sections set forth the conditions for use of that particular method. For example, if the purchasing agency determines in writing that competitive auction bidding is in the Commonwealth's best interests, contracts for supplies or services, "but not construction," may be entered into by competitive electronic auction bidding. 62 Pa.C.S. § 512.1.

Pursuant to Section 513, "[w]hen the contracting officer determines in writing that the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth, a contract may be entered into by competitive sealed proposals." In this instance, "contract" includes contracts for construction, and in the instant matter, the DGS Secretary exercised his authority to employ this alternative method of source selection. I would defer to the Secretary's determination:

The use of the standard competitive sealed bid process for the renovation of Foster Union would not be advantageous to the Commonwealth. Competitive sealed proposals are a more practical method of procurement since this will allow Proposers flexibility in developing their proposals to address their experience with this type of work and the ability to complete coordinated construction in a timely manner. In addition to expediting the process, this method will be more advantageous by allowing the Commonwealth the ability to consider criteria other than cost in the award process. The prime contracts to be awarded, if any, will be agreed—upon lump sum awards reflecting the costs submitted in the proposals.[1]

I also agree with DGS that the Separation Act's use of the term "bidder," given its date of enactment, does not preclude the use of the RFP process so long as the RFP contains separate specifications resulting in construction contracts awarded to separate prime contractors. Because the competitive sealed proposal method for construction contracts is clearly not prohibited by constitution or statute, this Court's inquiry should end. It is unwise

---

**1.** The decision to use the RFP process resulted from an April 11, 2005, "Determination to Use the Request for Proposal Method of Procurement."

for the Courts to micromanage executive branch procurement practices.

Therefore, I would grant summary judgment in favor of the Commonwealth, Department of General Services.

Judge McGINLEY and Judge LEADBETTER join in this dissent.