**[J-61-2018] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| WORKING FAMILIES PARTY, CHRISTOPHER M. RABB, DOUGLAS B. BUCHHOLZ, AND KENNETH G. BEISER, | : : : : | No. 34 EAP 2017 Appeal from the order of Commonwealth Court entered on September 18, 2017 at No. 435 MD 2016. |
| Appellants | : : : | |
| v. | : : : | ARGUED: September 25, 2018 |
| COMMONWEALTH OF PENNSYLVANIA, ROBERT TORRES, IN HIS OFFICIAL CAPACITY AS ACTING SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA AND JONATHAN M. MARKS, IN HIS OFFICIAL CAPACITY AS COMMISSIONER, BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION, DEPARTMENT OF STATE, COMMONWEALTH OF PENNSYLVANIA, | : : : : : : : : : : : : : | |
| Appellees | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE TODD**                                                    **DECIDED: June 5, 2019**

I join Justice Wecht's concurring and dissenting opinion to the extent he concludes that the anti-fusion provisions at issue, as applied to Appellants, violate the Equal Protection Clause of the federal Constitution.[1]  For the reasons he expresses, I agree that

---

[1] As a result, I would not reach Appellants' arguments under our state Constitution.  I would note, however, given the weakness of the justification offered by the Commonwealth for the anti-fusion provisions, I am nonetheless dubious the provisions would withstand scrutiny under our state charter.

the anti-fusion provisions have an unconstitutionally discriminatory effect on Appellants, in light of the weakness of the government's proffered interests and the existence of less-burdensome statutory alternatives. In my view, Justice Wecht eviscerates the Commonwealth's internally inconsistent argument that the anti-fusion provisions are justifiable because of the Commonwealth's need to determine vote strength – that is, to disaggregate votes were a candidate allowed to secure the nomination of multiple political parties or political bodies – while insisting that the parties/bodies have no countervailing interest in ensuring that their members may vote for their first choice candidate in a manner that also reflects their chosen party affiliation. I add one further observation concerning the legislative history of the Election Code.

The Commonwealth's claim that the anti-fusion provisions "serve an important regulatory purpose" hinges on the operation of 25 P.S. § 2963(d), as it is this section of the Election Code that requires that a single checkbox be placed on the ballot regardless of the number of parties by which a candidate is nominated. *See* Commonwealth's Brief at 36-39; *see also* Declaration of Jonathan Marks, 9/2/2016, at ¶¶ 47-51. Subsection (d) presently provides:

> Whenever any candidate shall receive more than one nomination for the same office, his name shall be printed once, and the names of each political party so nominating him shall be printed opposite the name of such candidate, arranged in the same order as candidates names are required to be arranged. ***At the right of all the party names*** or appellation ***shall be a single square*** of sufficient size for the convenient insertion of a cross (x) or check (√) mark.

25 P.S. § 2963(d) (emphasis added). This section is the primary basis for the Commonwealth's argument that votes for fusion candidates cannot be disaggregated, and, thus, that the strength of fusion candidates' support cannot be measured for purposes of the calculations required in the Election Code's definitions of political parties

and political bodies.  *See id.* § 2831 (defining political parties and political bodies based upon the votes cast for them in prior elections).  Accordingly, given the ballot design, in the Commonwealth's view, the anti-fusion provisions are necessary for the smooth operation of the Election Code.

Critically, however, when the anti-fusion provisions were added to the Election Code in 1937 – and, indeed, until 1968 – Section 2963(d) *mandated* disaggregation, by allowing a voter both to select a candidate and to select among the parties nominating that candidate.  The original 1937 language of Section 2963(d), of which only the last line has been subsequently revised, provided:

> Whenever any candidate shall receive more than one nomination for the same office, his name shall be printed once, and the names of each political party so nominating him shall be printed opposite the name of such candidate, arranged in the same order as candidates names are required to be arranged. ***At the right of every party name*** or appellation ***shall be a square*** of sufficient size for the convenient insertion of a cross mark.

Act of June 3, 1937, P.L. 1333, art. X, § 1003(d) (emphasis added).  Except for inconsequential alterations, the Code retained this feature until 1968, when the Legislature amended subsection (d) to its present form.  *See* Act of July 16, 1968, P.L. 354, No. 175.[2]

This legislative history belies the Commonwealth's claim that the problem of disaggregation is the "important regulatory purpose" served by the anti-fusion provisions, given that, as originally implemented and for over thirty years thereafter, a disaggregated

---

[2] As set forth in the text of the act (with deletions bracketed and additions underlined), the last sentence of subsection (d) was revised in 1968 as follows:  "At the right of [every party name] all the party names or appellation shall be a single square of sufficient size for the convenient insertion of a cross (x) or check (✓) mark".  Act of July 16, 1968, P.L. 354, No. 175.

ballot was part of the Code's design, alongside the anti-fusion provisions. Indeed, this feature of the ballot – that it allowed for disaggregated voting – is, in part, what prompted this Court in *Appeal of Magazzu*, 49 A.2d 411 (Pa. 1946), to create what is termed the "*Magazzu* exception," allowing political parties to fuse via write-in ballots. We came to this conclusion because we observed – citing, *inter alia*, the then-extant version of Section 2963(d) – that the Code "contemplated a possible nomination by more than one party by the use of 'write-in' ballots." *Id.* at 412.

Accordingly, I agree with Appellants that the Commonwealth's presently-asserted disaggregation problem is "an obstacle of the Commonwealth's own making." Appellants' Reply Brief at 6.[3] Indeed, in a tail-wagging-the-dog fashion, it appears the essential justification offered by the Commonwealth for the constitutionality of the anti-fusion provisions is based upon a legislative tweak, albeit a consequential one, injected into the Election Code decades after the anti-fusion provisions were first enacted.

For this additional reason, the Commonwealth's stated justifications cannot support the discriminatory effect of the anti-fusion provisions, as applied to Appellants.

Justice Donohue joins this concurring and dissenting opinion.

---

[3] The disaggregation problem created by the 1968 amendment became immediately apparent, as addressed in *Youngman Party v. Lycoming County Board of Elections*, 47 Pa. D. & C.2d 367 (Lycoming Cnty. 1969). Therein, candidates of the Youngman Party were cross-nominated by either the Democratic or Republican Party in the primary election and won the primary. Thereafter, in 1968, 25 P.S. § 2963(d) was amended, and, thus, at the ensuing general election, the ballot provided only one checkbox for each candidate, even though each of the Youngman Party candidates were cross-nominated. Ultimately, for purposes of the calculations in 25 P.S. § 2831, the court determined the Youngman Party candidates should be credited with 100% of the vote.