932 A.2d 1271

**PENNSYLVANIA ASSOCIATED BUILDERS AND CONTRACTORS, INC., Appellee**

v.

**COMMONWEALTH DEPARTMENT OF GENERAL SERVICES, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2006.

Decided Oct. 17, 2007.

582

Elizabeth Anne O'Reilly, Harrisburg, PA Department of General Services Iris Susan Pincus, Jeffrey Cooper, Wolf Berk, Gaines & Liss, for Department of General Services.

Gerard M. Waites, O'Donoghue & O'Donoghue, L.L.P., for PA Contractor Associations.

John W. Boyle, Roy Alan Powell, Daniel Hutman, Jones Day, Pittsburgh, for PA Associated Builders and Contractors, Inc.

Before: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal, we review the Commonwealth Court's Order, granting partial summary judgment to the appellee, Pennsylvania Associated Builders and Contractors, Inc. ("ABC"), and enjoining the appellant, the Commonwealth Department of General Services ("DGS"), from using the competitive sealed proposal process set forth in Section 513 of the Commonwealth Procurement Code ("Procurement Code" or "Code"), 62 Pa.C.S. § 513, for certain future construction projects. For the reasons stated below, the Order of the Commonwealth Court is reversed, and this case is remanded to the Commonwealth Court for further proceedings consistent with this opinion.

The record on summary judgment is as follows. In May of 1913, the General Assembly enacted a statute, commonly referred to as the Separations Act, which governs the letting of certain contracts for the erection, construction, and alteration of any public building. Act of May 1, 1913, P.L. 155, No. 104 § 1. Under the Separations Act, when the total cost of the project exceeds $4,000, those who secure the plumbing, heating, ventilating, and electrical work are duty-bound to prepare separate specifications, receive separate bids, and award separate contracts to the lowest responsible bidder for each of these branches. 71 P.S. § 1618.[1,2]

1. The Separations Act provides:
 § 1618. Separate specifications for plumbing, heating, ventilating and electrical work; separate bids and contracts
 Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty

In May of 1998, the General Assembly enacted the Procurement Code, which governs the procurement of supplies, services, and construction for the public. Act of May 15 1998, P.L. 358 No. 57 § 1 ("Act 57").[3] In establishing the Code, Act 57 provides that nothing in it repeals or modifies or supplants the Separations Act, except as explicitly stated in one of the Code's provisions, 62 Pa.C.S. § 322(6). Section 6(d) of Act 57 of 1998, P.L. 358.[4]

> of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.
>
> Every contract for the construction, reconstruction, alteration, repair, improvement or maintenance of public works shall comply with the provisions of the act of March 3, 1978 (P.L. 6, No. 3), known as the Steel Products Procurement Act.
>
> 71 P.S. § 1618 (footnote to Purdons cite omitted).

2. At the time the Separations Act was enacted, the designation of lowest responsible bidder was part of Pennsylvania law. In the case of *Douglass v. Commonwealth*, 108 Pa. 559 (Pa.1885), this Court addressed its meaning under the Act of May 23, 1874 P.L. 233, § 6, 53 P.S. § 282, which directed that municipal contracts for supplies are to be awarded to "the lowest responsible bidder." We concluded that the designation applies to pecuniary ability, and to judgment and skill. *Id.* at 563.

3. The Procurement Code defines "Procurement" and "Construction" as follows:

> "Procurement." Buying, purchasing, renting, leasing, licensing or otherwise acquiring any supplies, services or construction. The term also includes all functions that pertain to the obtaining of any supply, service or construction, including description of requirements, selection and solicitation of sources, preparation and award of contract and all phases of contract administration.
>
> Construction. The process of building, altering, repairing, improving or demolishing any public structure or building or other public improvements of any kind to any public real property. The term does not include the routine operation or maintenance of existing structures, buildings or real property.
>
> 62 Pa.C.S. § 103.

4. Act 57 provides:

> Nothing in this act shall repeal, modify or supplant the following acts and parts of acts:

In turn, Section 322(6) provides that DGS is not required to comply with the Separations Act for construction contracts that cost less than $25,000, but that all projects equal to or exceeding $25,000 are subject to the statute. 62 Pa.C.S. § 322(6).[5]

Under the Code, DGS is responsible for procuring or supervising the procurement of all supplies, services or construction needed by Commonwealth agencies for which it acts as purchasing agent. 62 Pa.C.S. § 321(a). In order to execute its responsibilities, the Code authorizes DGS to formulate policy and enter into contracts. 62 Pa.C.S. §§ 103, 301, 311–312, 322. In the Code, the word "contract" is defined as follows:

§ 103. Definitions

Subject to additional definitions contained in subsequent provisions of this part which are applicable to specific provisions of this part, the following words and phrases when used in this part shall have the meanings given to them in this section unless the context clearly indicates otherwise:

Except as explicitly stated in the addition of 62 Pa.C.S. § 322(6), section 1 of the act of May 1, 1913 (P.L.155, No.104), entitled "An Act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings."
Section 6(d) of Act 57 of 1998, P.L. 358.

5. In Section 322(6), the Code states:

The following procedure shall apply to construction to be completed by the department which costs more than the amount established by the department under section 514 (relating to small procurements) for construction procurement unless the work is to be done by Commonwealth agency employees or by inmates or patients of a Commonwealth agency institution:

* * *

(6) For construction contracts where the total construction costs are less than $25,000, the department shall not be required to comply with the the act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings," and the department may award such contracts in accordance with section 511. All projects equal to or exceeding $25,000 shall be subject to the Separations Act, the act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings...."
62 Pa.C.S. § 322(6).

* * *

Contract. A type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction and executed by all parties in accordance with the act of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act.

62 Pa.C.S. § 103 (footnote with Purdons citation omitted).

Since Section 511 of the Code states that all Commonwealth agency contracts shall be awarded by competitive sealed bidding under Section 512, unless otherwise provided by law and except as provided for in specified Code exceptions, DGS uses the competitive sealed bidding process set forth in Section 512 to award construction contracts. 62 Pa.C.S. § 511. Under Section 512, DGS issues an invitation for bids and awards the contract to the lowest responsible bidder. 62 Pa.C.S. § 512(b),(g).[6]

One of the exceptions to Section 512 listed in Section 511 is Section 513. 62 Pa.C.S. §§ 511, 513.[7] Under Section 513,

---

6. Section 512 provides in relevant part:
 (a) Conditions for use.—Contracts shall be awarded by competitive sealed bidding except as otherwise provided in section 511 (relating to methods of source selection).
 (b) Invitation for bids.—An invitation for bids shall be issued and shall include a procurement description and all contractual terms, whenever practical, and conditions applicable to the procurement.
 * * *
 (g) Award.—The contract shall be awarded within 60 days of the bid opening by written notice to the lowest responsible bidder or all bids shall be rejected except as otherwise provided in this section.....
 62 Pa.C.S. § 512(a)-(b),(g).

7. Section 513 provides in full:
 (a) Conditions for use.—When the contracting officer determines in writing that the use of competitive sealed bidding [under Section 512] is either not practicable or advantageous to the Commonwealth, a contract may be entered into by competitive sealed proposals.
 (b) Request for proposals.—Proposals shall be solicited through a request for proposals.
 (c) Public notice.—Public notice of the request for proposals shall be given in the same manner as provided in section 512(c) (relating to competitive sealed bidding).
 (d) Receipt of proposals.—Offerors shall submit their proposal to ensure that their proposals are received prior to the time and date

DGS may determine whether the use of competitive sealed bidding under Section 512 is either not practicable or advantageous to the Commonwealth. 62 Pa.C.S. § 513(a). If so, DGS solicits proposals from offerors by issuing a request for proposals ["RFP"], and selects for contract negotiation the offeror who submits the responsive proposal that is determined to be most advantageous to DGS, taking price and other evaluation factors into account. 62 Pa.C.S. § 513(b),(g).

Under a policy determination made in April of 2005, DGS considers use of Section 513 for the procurement of contracts for complex construction projects or those with allocations in excess of $5,000,000. In this regard, DGS developed a competitive sealed proposal process referred to as the "RFP process," which is described in two documents that DGS distributed, the "Standard Request for Proposals for Multiple Prime Contractors for Construction" ("Standard RFP") and the "Request for Proposals Guidelines" ("RFP Guidelines").[8]

established for receipt of the proposals. Proposals shall be submitted in the format required by the request for proposals. Proposals shall be opened so as to avoid disclosure of their contents to competing offerors.

(e) Evaluation.—The relative importance of the evaluation factors shall be fixed prior to opening the proposals. A Commonwealth agency is required to invite its comptroller to participate in the evaluation as a nonvoting member of any evaluation committee.

(f) Discussion with responsible offerors and revision of proposals.— As provided in the request for proposals, discussions and negotiations may be conducted with responsible offerors for the purpose of clarification and of obtaining best and final offers. Responsible offers shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals. In conducting discussions, there shall be no disclosure of any information derived from proposals submitted by competing offerors.

(g) Selection for negotiation.—The responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation.

62 Pa.C.S. § 513.

8. Under the RFP process, DGS calculates a proposal score for each responsive proposal that is timely submitted. The responsible offeror whose responsive proposal receives the highest proposal score is selected for contract negotiation. The formula DGS uses for calculating a proposal score is: Proposal score = Cost Submittal Score × (0.60) +

ABC is an association comprised of general contractors who are incorporated in or doing business in the Commonwealth, or both. On October 11, 2005, ABC filed a Petition for Review in the Nature of a Complaint in Equity against DGS in the Commonwealth Court. In its complaint, ABC alleged that because DGS's use of the RFP process results in the award of construction contracts to someone other than the lowest responsible bidder it is unlawful under the Pennsylvania Constitution, PA. CONST. Art. III, § 22; the Separations Act, 71 P.S. § 1618, the Procurement Code, 61 Pa.C.S. §§ 511, 513, DGS regulations, 4 Pa.Code § 69.6; and the common law.[9] ABC further alleged the RFP process was implemented in a manner that violated the Commonwealth Documents Law, 45 P.S. § 1201, *et seq.;* conflicts with Section 513's requirements; and thwarts the rights of meaningful protest that the Procurement Code gives to those who are not selected for contract negotiation, 62 Pa.C.S. § 1711.1. ABC requested that DGS be preliminarily and permanently enjoined from using the RFP process or any other process that does not award construction contracts to the lowest responsible bidder.

In response to ABC's Petition for Review, DGS filed preliminary objections, raising ABC's lack of standing, failure to exhaust administrative remedies, and failure to state a claim upon which injunctive relief can be granted. By Order dated February 23, 2006, the Commonwealth Court denied DGS's preliminary objections, and DGS filed its Answer with New Matter.

On March 15, 2006 and March 25, 2006, ABC and DGS filed cross motions for partial summary judgment, respectively. The motions raised the same threshold issue—whether DGS may use the competitive sealed proposal process set forth in

Technical Submittal Score × (0.30) + Disadvantaged Business Submittal Score (0.10). The maximum proposal score is 100.

**9.** As noted, the Separations Act also requires that separate specifications for the plumbing, heating, ventilating, and electrical work be prepared; that separate bids for this work be received and that separate contracts for this work be awarded. *See supra* n. 1. In this case, ABC has not argued that DGS's RFP process violates these particular requirements.

Section 513 of the Code for the procurement of construction contracts. 62 Pa.C.S. § 513.[10] The Commonwealth Court *en banc* addressed this threshold issue in a published opinion and order, and held that DGS may not procure construction contracts through the competitive sealed proposal process because Section 513 does not apply to construction contracts. *Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth, Department of General Services*, 899 A.2d 389 (Pa.Cmwlth.2006).

The Commonwealth Court's holding was premised on several conclusions. First, the court concluded that even though the word "contract" as defined in the Code at 62 Pa.C.S. § 103 includes construction contracts, "that definition is not preclusive because within the Procurement Code that definition is not always used to include construction contracts." *Id.* at 396. Second, the court concluded that more importantly, application of the Code's definition of contract to Section 513 was "essentially vitiated" by the incorporation of the Separations Act into the Code by Section 322(6). *Id.* In this regard, the court reasoned that if it were to interpret Section 513 as applying to construction contracts, the Code would modify the Separations Act, a result that was prohibited under Section 6(d) of Act 57's repealer section. *Id.* And third, the court concluded that a ruling that Section 513 included construction contracts would

**10.** ABC's motion for partial summary judgment also raised whether the RFP process was contrary to law, arbitrary and capricious and an abuse of discretion; whether the RFP process violates the Separations Act; whether the RFP process violates the Pennsylvania Constitution; whether DGS failed to follow applicable rule making procedures in implementing the RFP process and whether the Standard RFP renders the Procurement Code's bid protest procedures meaningless.

DGS's motion for partial summary judgment also raised the issues whether its solicitation of multiple prime construction contracts through the use of a sealed proposal process violates the Separations Act, the Pennsylvania Constitution, and/or the Commonwealth Documents Law; whether the language in DGS' solicitation for multiple prime construction contracts through the use of a sealed proposal process properly protect the rights of protest; and whether two specific decisions DGS made in determining to use the competitive sealed proposal process were arbitrary or an abuse of discretion.

None of these issues was addressed by the Commonwealth Court, given its resolution of the threshold issue.

ignore portions of the Code's legislative history where references to construction contracts and the competitive sealed proposal process in early versions of certain Code sections were not included in those sections as finally enacted. *Id.* at 397.

Accordingly, by Order dated May 18, 2006, the Commonwealth Court granted ABC's motion for partial summary judgment; denied DGS's motion for partial summary judgment; and enjoined DGS from utilizing the competitive sealed proposal process on any future construction project under its RFP process, its Standard RFP and its RFP Guidelines. *Id.* at 397.[11]

 DGS filed a timely appeal in this Court, raising whether the Commonwealth Court correctly held that Section 513 does not apply to construction contracts and thus, is unavailable to DGS for the procurement of construction contracts.[12]

**11.** President Judge Colins authored a dissenting opinion, which Judges McGinley and Leadbetter joined. The dissent would have concluded that the competitive sealed proposal method for construction contracts is not clearly prohibited by constitution or statute; that given the Separation Act's date of enactment, its use of the word "bidder" does not preclude the use of the RFP process, so long as its other requirements are followed; and that it is unwise for the courts to micromanage executive branch procurement practices. *Id.* at 397–400.

**12.** We have jurisdiction under 42 Pa.C.S. § 723. Our substantive review is reflected in the Pennsylvania Rules of Civil Procedure that govern summary judgment. Under the Rules, the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. Pa.R.C.P. No. 1035.2(1). Under the Rules, a motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. Note to Pa.R.C.P. No. 1035.2.

An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221 (2002). As the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is de novo; thus, we need not defer to the determinations made by the lower tribunals. *Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850, 857 n. 3 (2005). Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *Id.;* Pa.R.A.P. 2111(a)(2).

The issue that DGS raises presents a matter of statutory construction. Therefore, the Statutory Construction Act of 1972 ("Statutory Construction Act" or "Act") controls. 1 Pa.C.S. § 1501 *et seq.* Under the Act, it is fundamental that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,]" and that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). In this regard, the Act instructs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations. 1 Pa.C.S. § 1921(c).

■ The Act provides that "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage"; and that "technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). Further, if the General Assembly defines words that are used in a statute, those definitions are binding. *Commonwealth v. Kimmel*, 523 Pa. 107, 565 A.2d 426, 428 (1989). The Act allows a court to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(1),(2),(5). Moreover, the Act sets forth rules for a court to follow when provisions in or among statutes are in conflict and cannot be reconciled. 1 Pa.C.S. §§ 1933–1936.

Turning to the Commonwealth Court's conclusion that the terms of Section 513 exclude construction contracts from its coverage, we start, as we must, with the statute's language. DGS asserts that when the Code's definition of contract is incorporated into Section 513(a), the statute effectively states that "[w]hen [DGS] determines in writing that the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth, a contract [which means a written agreement . . . for the procurement or disposal of supplies, services *or construction*] may be entered into by competitive sealed proposals." 62 Pa.C.S. §§ 103, 513(a) (emphasis added). Thus, Section 513 clearly and explicitly includes construction contracts within its scope. 62 Pa.C.S. §§ 103, 513(a).

Reflecting the Commonwealth Court's analysis, ABC counters that even though the Code's definition of contract in 62 Pa.C.S. § 103 includes three alternative agreement types, there is more to the definition for purposes of construing the Section 512's exceptions. ABC argues that inasmuch as several of the exceptions, like Section 517,[13] contain the word "construction," while others, like Section 513 do not, the word "contract" is to include the contract for construction alternative only when the exception also mentions the word "construction." Since Section 513 does not, it does not cover construction contracts.

ABC is correct in one respect: there is more to the General Assembly's definition of contract in 62 Pa.C.S. § 103. ABC is, however, mistaken as to what more there is. In addition to defining Code terms, 62 Pa.C.S. § 103 opens with a passage that states in relevant part, that "the following words and phrases when used in this part shall have the meanings given to them in this section *unless the context clearly indicates otherwise.*" 62 Pa.C.S. § 103 (emphasis added). From these words, it follows that the General Assembly contemplated that there might be instances in the Code when a term defined in

13. Section 517, an exception to Section 512 for multiple awards, states in one of its subsections that "[i]nvitations to bid or requests for proposals shall be issued for the supplies, services or construction to be purchased." 62 Pa.C.S. § 517.

62 Pa.C.S. § 103, like "contract," has a meaning that differs from the definition given it, and directed that attention be paid to what surrounds the term in order to determine whether or not the Code's definition applies.

■ Applying these instructions to Section 513, we observe that when read in context, there is nothing to indicate that the General Assembly intended for the word "contract" as used in that exception to mean something other than its Code definition—"[a] . . . written agreement . . . for the procurement or disposal of supplies, services or construction." 62 Pa.C.S. § 103. *See supra* pp. 585–87, 932 A.2d at 1274–76. Moreover, in our view, this definition of contract is clear and explicit in including contracts for construction. Therefore, we conclude that the clear and unambiguous language of the exception in Section 513 encompasses construction contracts, and that the Commonwealth Court's conclusion to the contrary was erroneous.

■ In addition, we conclude that the Commonwealth Court's two alternative bases for its holding were unfounded. The first was the Commonwealth Court's reliance on contemporaneous legislative history to construe Section 513 and decide that it did not apply to construction contracts. Under the Statutory Construction Act, it is only when the words of a statute are not explicit that factors extraneous to statutory language may be consulted to ascertain the General Assembly's intent. 1 Pa.C.S. § 1921(c); *Commonwealth v. Packer*, 568 Pa. 481, 798 A.2d 192, 196 (2002) (observing that only when the language of the statute is ambiguous does statutory construction under 1 Pa.C.S. § 1921(c) become necessary). Because the words of Section 513 are clear with respect to the question before us, the Code's contemporaneous legislative history, one of the extraneous factors listed in the Act, should not have been consulted. 1 Pa.C.S. § 1921(c)(7).

■ The second was the Commonwealth Court's decision to vitiate application of the Code's definition of contract to Section 513, apparently out of a concern that there would be a conflict between Section 322(6) and Section 513, if the definition were applied in the latter. Under the Act, a court is not to anticipate and avoid a conflict between statutory provisions

by disregarding a statutory definition or other statutory language or by choosing to give effect to one provision, but not to another. *See* 1 Pa.C.S. § 1921(a). Rather, the solution to a conflict in statutory provisions, should one occur once the provisions have been properly construed, lies in the several sections of the Act that provide the analysis for a court to follow when there are conflicts between statutory provisions or statutes. 1 Pa.C.S. §§ 1933–36.

Our present inquiry, however, is not ended. We must address the interplay between Section 513 and Section 322(6) because Section 322(6), like Section 513, concerns the area of construction contract procurement and has bearing on the question that we must ultimately resolve, which is whether DGS may use Section 513 to procure such contacts. 62 Pa.C.S. §§ 322(6), 513. DGS asserts that if we were to read the Code as a whole and study its legislative history, we would see that the General Assembly sought to enlarge the methods of public contract procurement, and from this we would conclude that Section 322(6) incorporates the mandate of separate specifications, bids, and contracts for plumbing, heating, ventilation and electrical work from the Separations Act into the Code, but not its mandate that awards be made to the lowest responsible bidder. *See* 71 P.S. § 1618. Therefore, Sections 322(6) and 513 are harmonious. ABC responds that DGS's position has no merit because the words in Section 322(6) and Section 6(d) of Act 57 of 1998, P.L. 358, Act 57's repealer section, reveal that all of the Separations Act's requirements apply to DGS' procurement of construction contracts under the Code.

As to the meaning of Section 322(6), we agree with ABC. Section 322(6) makes no differentiation among the Separations Act's elements and clearly gives effect in the Code to every one of the statute's requirements. 62 Pa.C.S. § 322(6). The only modification Section 322(6) makes to the Separations Act is to increase its $4,000 monetary trigger. *Id.* *See* 71 P.S. § 1618.[14] Accordingly, we conclude that under Section 322(6),

**14.** As noted, after modifying the Separations Act's monetary trigger, Section 322(6) subjects all construction contracts to the Separations

construction contracts equal to or in excess of $25,000 must be awarded to the lowest responsible bidder, as the Separation Act requires. *Id.*

Yet, at the same time, Section 513 allows DGS to select a person other than the lowest responsible bidder for construction contract negotiation. 62 Pa.C.S. § 513(g). Thus, Section 513 and Section 322(6) clearly conflict in the respective rules they set for the procurement of construction contracts. 62 Pa.C.S. §§ 322(6), 513(g).

At this juncture, we turn to those sections in the Statutory Construction Act that provide instructions for ascertaining the General Assembly's intent when statutory provisions conflict.[15] The Act has several such sections. The section that we conclude presently applies is 1 Pa.C.S. § 1933, which covers conflicts when, as here, a court faces two statutory provisions that cover the same subject matter and speak to the question before it, and in these regards, can be differentiated as general or special. With respect to the procurement of construction contracts, since Section 322(6) applies to "all" construction contracts, it is the general provision; since Section 513 applies to only certain construction contracts in specified exceptional circumstances, it is the special provision. 62 Pa. C.S. §§ 322(6), 513.

Section1933 initially instructs that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible so that effect can be given to both." Section 1933 next instructs that "[i]f the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later

Act. Act 57's repealer section is consonant with Section 322(6). 62 Pa.C.S. § 322(6); Section 6(d) of Act 57 of 1998, P.L. 358. *See supra* nn. 4,5.

**15.** We observe that because DGS argued that there was no conflict in the Code's provisions and ABC argued that Section 513 does not apply to construction contracts, neither party took a position on application of the Statutory Construction Act in this regard.

and it shall be the manifest intention of the General Assembly that such general provision prevail." *Id.*[16]

With these principles from the Statutory Construction Act in mind, we conclude that Section 322(6) and Section 513 are irreconcilable. 62 Pa.C.S. §§ 322(6), 513. That is, we can discern no way to harmonize these provisions, given the clear import of each. Therefore, we further conclude that Section 513, the special provision, prevails and is viewed as an exception to the general provision, Section 322(6). *Id.* Accordingly, we hold that contracts for the procurement of construction may be entered by DGS under Section 513, through the competitive sealed proposal process. 62 Pa.C.S. § 513.

For all of these reasons, the Order of the Commonwealth Court is reversed, and this case is remanded to the Commonwealth Court for further proceedings consistent with this opinion.

Former Justice Newman did not participate in the consideration or decision of this case.

Justice CASTILLE and BAER join the opinion.

Justice EAKIN files a concurring opinion.

Justice SAYLOR files a dissenting opinion.

Justice BALDWIN files a dissenting opinion.

Justice EAKIN, Concurring.

I agree with the majority that 62 Pa.C.S. § 513 is applicable to construction contracts as much as it is to anything else, *see* Majority Op., at 592–93, 932 A.2d at 1279; however, the constitutionality of the statute has not yet been addressed. *See Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth Department of General Services*, 899 A.2d 389, 397 n. 16 (Pa.Cmwlth.2006) (declining to address issues raised in summary judgment motion because Commonwealth Court decided § 513 is not applicable to construction con-

16. 62 Pa.C.S. § 322(6) and § 513 were enacted at the same time. Act of May 15 1998, P.L. 358 No. 57 § 1.

tracts). While the majority answers well the singular question presented to us at this time, there are concerns under Pa. Const. art. III, § 22 that must be answered on remand, and our decision should not be taken as precluding analysis of them.[1]

Justice SAYLOR, Dissenting.

In the face of the patent conflict between Sections 513 and 322(6) of the Commonwealth Procurement Code, the majority's resolution of this appeal turns on its application of Section 1933 of the Statutory Construction Act, which provides, as a general rule, that where two provisions a statute are in irreconcilable conflict, the special provisions shall prevail and be construed as an exception to the general provision. *See* Majority Opinion, at 593–96, 932 A.2d at 1280–81 (citing 1 Pa.C.S. § 1933). The majority reasons that Section 322(6) is the general provision, because it applies to all construction contracts, and Section 513 is the special provision, because it applies only to certain construction contracts in specified exceptional circumstances. *See id.* at 595–96, 932 A.2d at 1281.

It seems to me, however, that the better view is that Section 513 is the general provision, because on its terms it extends to the broader category of "contracts" (defined as "[a] type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction . . . ," 62 Pa.C.S. § 102); whereas, Section 322(6) is the special provision, because its requirement to adhere to the Separations Act applies only to "construction contracts," and even then to a limited subset of those (namely, construction con-

1. The sealed bid process is only permitted when the normal low bidder process is "not practical or advantageous" to the Commonwealth. There are, at best, vague standards that guide this determination, and nowhere do there appear to be procedures to guide that determination, nor to review or challenge the determination once made. Neither the unsuccessful bidders nor the man on the street knows why the "normal" process was not used. Likewise, none can know why the unsuccessful bidder was unsuccessful. The Commonwealth's agencies' choices of process and awarding of contracts cannot be immune from constitutional scrutiny, yet one cannot evaluate, nor mount a challenge, constitutional or otherwise, to the decision on which process to use, nor to the result of the process, when one cannot determine the basis for either decision.

tracts that exceed $25,000 in cost), 62 Pa.C.S. § 322(6). Thus, while I agree with the majority that Section 1933 of the Statutory Construction Act is dispositive, in my view, its application yields the conclusion that construction contracts exceeding $25,000 are governed by the Separations Act.

To the extent that there are two plausible perspectives concerning which of Sections 513 or 322(6) should be regarded as the special provision, the Commonwealth Court should not be faulted for its review of the Procurement Code's contemporaneous legislative history, as this is an appropriate tool of statutory construction in the face of such an ambiguity. *See* 1 Pa.C.S. § 1921(c)(7). Thus, it is significant to me that such review supports the position that Section 322(6) functions as a special provision, in that a prime sponsor of the underlying bill offered members of the General Assembly assurances consistent with this conclusion. *See Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth, DGS,* 899 A.2d 389, 395–96 (Pa.Cmwlth.2006) (citing Legislative Journal–Senate, at 1475 (Feb. 10, 1998)) (reflecting the query to the Honorable Robert J. Thompson, "I just want to make sure it is always the lowest responsible contractor in any major contract that would receive that bid," and Senator Thompson's response, "Mr. President, the lowest responsible proposal at this time, yes.").[1]

For these reasons, I would affirm the Commonwealth Court's order.

Justice BALDWIN, Dissenting.

I respectfully disagree with the majority's conclusion that the language of section 513 of the Procurement Code (62 Pa.C.S. § 513) clearly and unambiguously encompasses construction contracts.

---

1. Although the senator raising the question did not expressly couch his concern in terms of "construction" contracts, the context indicates that this was the relevant concern, as the questioning was posed in terms of assuring the award of contracts to the lowest responsible bidder "whether it be union or nonunion," and Senator Thompson's response distinguished between small and larger contracts, consistent with Section 322(6). *See id.*

Section 103 of the Procurement Code defines the term "contract" as "a type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction...." 62 Pa.C.S. § 103. However, while section 103 includes contracts for construction in the definition of the term "contract," within the Procurement Code the term "contract" does not always include construction contracts.

Within the Procurement Code, where the Legislature intends the statute to apply to construction contracts, the statutory language frequently indicates with specificity that the statute extends to contracts for construction. For example, section 517 governing the award of multiple contracts explicitly encompasses contracts for construction in its grant of authority. *See also* 62 Pa.C.S. § 515 ("A contract may be awarded for a *supply, service or construction* item without competition if the contracting officer first determines in writing that one of the following conditions exists ...") (emphasis added); 62 Pa.C.S. § 514, governing the allocation of small procurements for projects that do not exceed $10,000 distinguishes between supply, service, and construction contracts as follows: ("The head of the purchasing agency may authorize procurement of the *supply or service* on a no-bid basis for procurements which do not exceed the amount established by the head of the purchasing agency for small no-bid procurements. The head of the purchasing agency may authorize procurement on a no-bid basis for *construction* projects that do not exceed a total construction cost of $10,000.") (emphasis added). Every word, sentence, or provision of a statute is intended for some purpose so that the statute must be construed so as to give effect to every word. *Commonwealth v. Lobiondo,* 501 Pa. 599, 604, 462 A.2d 662, 664 (1983). While the Procurement Code in many instances specifies which of its sections are to apply to contracts for construction, the Legislature failed to expressly indicate that section 513 was applicable to construction contracts.

It is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction

with each other, and construed with reference to the entire statute. *Hous. Auth. of Cty. of Chester v. Pennsylvania State Civil Serv. Comm'n,* 556 Pa. 621, 641, 730 A.2d 935, 946 (1999). Reading all sections of the Procurement Code in conjunction with each other, it is clear that the term "contract" does not have a consistent, explicit meaning as used within the Code, and that the term does not necessarily include construction contracts in all instances. Where the Legislature includes specific language in one section of a statute and excludes it from another, that language should not be implied where excluded. *Fonner v. Shandon, Inc.,* 555 Pa. 370, 379, 724 A.2d 903, 907 (1999). Because within the Procurement Code the term "contract" does not always extend to construction contracts and the language of section 513 does not specifically include construction contracts, I would not read section 513 to unambiguously encompass such contracts.

The majority finds that section 513 and section 322(6) of the Procurement Code are clearly in conflict. When engaging in statutory interpretation however, "[a] conflict between various statutes or parts thereof is to be avoided and, if possible, the apparently conflicting provisions must be construed together with the more specific provisions prevailing over the general ones." *Hous. Auth. of Cty. of Chester,* 556 Pa. at 641, 730 A.2d at 946. Reading Section 513 of the Procurement Code as the majority does to unambiguously include contracts for construction creates an unavoidable conflict with those provisions of the Procurement Code which expressly incorporate the Separations Act. In keeping with the principle of statutory construction that any conflicts within and between statutes are to be avoided, I would decline to hold that the Legislature intended to permit the solicitation of competitive sealed proposals for construction contracts, or that the Separations Act, which requires contracts to be solicited through the competitive bidding process, irreconcilably conflicts with the Procurement Code, rendering the Separations Act ineffective.

In the absence of a manifestly contrary intention on the part of the Legislature, a construction of two statutes which allows both to operate is mandatory. *Appeal of Yerger,* 460 Pa. 537,

543, 333 A.2d 902, 905 (1975). The two statutes at issue, the Separations Act and the Procurement Code, are capable of a construction which allows both to remain effective by limiting the scope of section 513 to exclude construction contracts, leaving such contracts to be governed by the bidding process as specified in the Separations Act. Accordingly, the determination of the Commonwealth Court that the General Assembly did not intend to allow construction contracts to be let by a proposal process should be affirmed.