IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sheilah D. Vance, : 
          Appellant : 
         : 
        v. : 
         : 
Cheyney University of Pennsylvania, :   No. 1751 C.D. 2017
Robert Bogle and Frank Brogan :   Argued: November 15, 2018


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge (P.)
              HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: December 7, 2018


Sheilah D. Vance (Vance) appeals the October 17, 2017 order of the Court of Common Pleas of Chester County (trial court) granting the motion for judgment on the pleadings filed by Cheyney University of Pennsylvania, Robert Bogle (Bogle) and Frank Brogan (Brogan) (collectively, Defendants) with respect to Counts I, II, III, V and VI of her complaint.[1] On appeal, Vance asks this Court to vacate the order of the trial court, remand the case to the trial court with instructions to transfer Counts I and II to the Board of Claims and deny Defendants' motion for

---

[1] On May 2, 2017, the trial court issued an order sustaining Defendants' preliminary objection to Count IV on the basis of lack of jurisdiction, and Vance does not challenge this order on appeal. Reproduced Record (R.R.) at 142a. *See infra* page 4.

judgment on the pleadings as to Counts III, V and VI.[2] Vance's Brief at 21. Upon review, we affirm the order of the trial court.

Vance served as the chief of staff and deputy to the president of Cheyney University of Pennsylvania (Cheyney) from July 12, 2012 until her termination on May 9, 2016. Reproduced Record (R.R.) at 1a. In July 2012, Vance was appointed chief of staff and deputy to the president of Cheyney. *Id.* By letter dated June 20, 2013, Vance was reappointed to this position for a two-year term extending from July 1, 2013 through June 30, 2015. R.R. at 26a. The letter indicated that Vance's appointment was subject to the terms and conditions of the policies of the Board of Governors of the Pennsylvania State System of Higher Education (PASSHE). *Id.* The letter further advised that, pursuant to Board of Governors Policy 1984-14-A (Terms and Conditions of Employment of Senior Policy Executives), Vance would serve at the pleasure of Cheyney's president and that any payout for a non-cause separation prior to the end date of the appointment would be subject to the terms of a release and settlement agreement. *Id.* By letter dated June 29, 2015, Cheyney's interim president reappointed Vance to her position for a one-year term extending from July 1, 2015 through June 30, 2016. R.R. at 28a. The letter provided that Vance would serve at the pleasure of the president and that her employment could terminate at any time, with or without cause. *Id.* By letter dated July 31, 2015, Cheyney's interim president rescinded the June 29, 2015 letter and reappointed Vance to a two-year term extending from July 1, 2015 through June 30,

---

[2] "Our review of a trial court's decision granting a motion for judgment on the pleadings considers whether the court committed an error of law or whether unresolved questions of material fact remain outstanding. Our scope of review is plenary." *Pfister v. City of Philadelphia,* 963 A.2d 593, 596 n.7 (Pa. Cmwlth. 2009). "Further, we will sustain the trial court's grant of judgment on the pleadings only where the movant's right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise." *N. Sewickley Twp. v. LaValle*, 786 A.2d 325, 327 (Pa. Cmwlth. 2001).

2017. R.R. at 31a. This letter again informed Vance that she served at the pleasure of the president and that any payout for a non-cause separation prior to the end date of this appointment would be subject to the terms of a release and settlement agreement. *Id.*

By letter dated May 9, 2016, Vance was informed that her position was to be eliminated effective that same day and that May 13, 2016 would be her last day of employment. R.R. at 40a.[3] The letter stated that Vance's termination was taken in accordance with Section B of the Board of Governors Policy 1984-14-A, pursuant to which Vance "serve[d] as an appointee and at the pleasure of the respective president or the chancellor." R.R. at 35a. On August 5, 2016, Vance filed a complaint against Defendants, raising the following claims: Count I: Breach of Contract; Count II: Violation of the Pennsylvania Wage Payment and Collection Law;[4] Count III: Wrongful discharge; Count IV: Violation of the Pennsylvania Whistleblower Law,[5] Count V: Tortious interference with contract by Bogle; and Count VI: Tortious interference with contract by Brogan. R.R. at 1a-23a.

On or around October 14, 2016, Defendants filed preliminary objections in the nature of a demurrer pursuant to Pennsylvania Rule of Civil Procedure No. 1028(a)(4), arguing that sovereign immunity barred the claims asserted in Counts I, II, III, V and VI. R.R. at 120a. Defendants argued that

---

[3] Vance alleged in her complaint that Cheyney was struggling financially and that defendant Brogan had received a letter directing Cheyney to cut $2 million or 20 positions in the 2015-16 academic year. R.R. at 15a-17a. Before this Court, Vance avers that Cheyney also terminated eight other "high level and management employees." Vance's Brief at 8. Vance asserts, however, that the elimination of her position was not a part of Cheyney's plan for staffing and budget cuts, but that it resulted instead from her disclosure to state and federal authorities of allegedly discriminatory remarks made at a meeting by Bogle. Vance's Brief at 10-11.

[4] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§ 260.1–260.45.

[5] Act of Dec. 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421–1428.

Cheyney, as a Commonwealth entity, is immune from Vance's employment-based contract claim and Pennsylvania Wage Payment and Collection Law claim. R.R. at 119a. Defendants also contended that Brogan and Bogle, as Commonwealth officials, are immune from Vance's claims of tortious interference with contract. R.R. at 119a. Defendants further contended that the trial court lacked jurisdiction over Count IV pursuant to Rule 1028(a)(1), because the Commonwealth Court has original and exclusive jurisdiction over Pennsylvania Whistleblower Law claims against Commonwealth entities. R.R. at 120a (citing 42 Pa. C.S. § 761(a)(1)). On November 6, 2016, Vance filed an answer. R.R. at 134a-41a. On May 2, 2017, the trial court issued an order sustaining Defendants' preliminary objection to Count IV on the basis of lack of jurisdiction because Vance was required to bring this claim directly to the Commonwealth Court.[6] R.R. at 142a. However, the trial court overruled Defendants' preliminary objections to Counts I, II, III, V and VI because Defendants failed to raise the defense of sovereign immunity as new matter.[7] R.R. at 142a.

On May 31, 2017, Defendants filed an answer and separately averred as new matter that sovereign immunity barred Vance's complaint. R.R. at 144a-51a. On June 5, 2017, Vance filed a reply to Defendants' new matter. R.R. at 152a-54a. On June 23, 2017, Defendants filed a motion for judgment on the pleadings pursuant to Pennsylvania Rule of Civil Procedure No. 1034, arguing that Vance's claims are

---

[6] Vance refiled her whistleblower claim against Cheyney with this Court, where it remains pending. *See Vance v. Cheyney University of Pennsylvania*, No. 210 M.D. 2017.

[7] In its order, the court also noted that, although a party can raise sovereign immunity by preliminary objection when it is clear from the face of the complaint that immunity applies and the opposing party waives its objection to this procedural defect, sovereign immunity was not clear from the face of Vance's complaint and Vance did not waive her objection to this procedural defect. R.R. at 142a-43a n.1.

legally insufficient as they are precluded by sovereign immunity. R.R. 155a-66a. Vance did not respond to this motion. Defendants' Brief at 7. On October 17, 2017, the trial court granted Defendants' motion for judgment on the pleadings, entering judgment in their favor as to Counts I, II, III, V and VI. R.R. at 167a. On December 20, 2017, the trial court issued an opinion expounding upon its order. R.R. at 191a-93a. In its opinion, the trial court explained that sovereign immunity has not been waived for disputes over employment contracts, thereby barring Count I; sovereign immunity has not been waived with respect to the Wage Payment and Collection Law claim, thereby barring Count II; and sovereign immunity has not been waived for Counts III, V and VI as they do not fall within any of the nine exceptions under Section 8522(b) of the Sovereign Immunity Act, 42 Pa. C.S. § 8522(b). R.R. at 192a-93a. Vance filed a motion for reconsideration of the October 17, 2017 trial court order, and Defendants filed a response in opposition. R.R. at 168a-89a. Before the trial court could issue a decision regarding her motion, Vance appealed the order to this Court.[8]

Before this Court, Vance argues that the trial court should have transferred Count I, the breach of contract claim, to the Board of Claims.[9] Vance's Brief at 17. Vance contends that three of the cases cited in the trial court's order and in Defendants' motion for judgment on the pleadings do not require dismissal of her

---

[8] The trial court did not rule upon Vance's motion for reconsideration.

[9] Although Vance does not explain the following in her brief, we assume she argues that the Board of Claims has jurisdiction over her breach of contract claim because the General Assembly has waived sovereign immunity for claims against the Commonwealth that fall within the narrow jurisdiction of the Board of Claims and are brought in accordance with the its procedure. *See Dubaskas v. Dep't of Corr.*, 81 A.3d 167, 173–74 (Pa. Cmwlth. 2013) ("The Board was established in furtherance of a public policy extending more than 200 years ago to allow claimants who ordinarily would have been barred by sovereign immunity to have a method of redress against the Commonwealth.").

5

breach of contract claim because, "[a]t most, those cases stand for the proposition that a claim for breach of an employment contract must be litigated before the Board of Claims."[10]  Vance's Brief at 17.  Vance instead asserts that the unpublished case of *Czop/Specter, Inc. v. Department of Transportation* (Pa. Cmwlth., No. 374 M.D. 2015, filed December 15, 2015)[11] supports her claim, because in that case, "the plaintiff could only seek a remedy in the Board of Claims to recover any sums purportedly due under the contracts . . . ."[12]  Vance's Brief at 19.  Further, Vance clarifies that "[i]n Count I, [she] contends that Cheyney breached the 2015 [r]eappointment [l]etter, not by terminating her employment, but rather by refusing

---

[10] The three cases are: *Armenti v. Pennsylvania System of Higher Education*, 100 A.3d 772 (Pa. Cmwlth. 2014); *Roe v. Pennsylvania Game Commission*, 147 A.3d 1244 (Pa. Cmwlth. 2016); and *Dubaskas v. Pennsylvania Department of Corrections*, 81 A.3d 167 (Pa. Cmwlth. 2013).  The trial court cited only *Armenti*, but Defendants discussed all three.  In *Armenti*, this Court held that the Board of Claims lacked jurisdiction over the claims of a former member of the PASSHE Board of Governors stemming from his termination from employment.  100 A.3d at 774, 777.  In *Roe*, we found that the Board of Claims lacked jurisdiction over breach of contract claims arising from a disputed settlement agreement, which were alleged against the Pennsylvania Game Commission by the Commission's former executive director.  147 A.3d at 1246, 1253-54.  In *Dubaskas*, this Court held that the Board of Claims did not error in determining that it lacked jurisdiction over the employment-related claims of a Department of Corrections employee stemming from an 'offer of employment' letter.  81 A.3d at 177.  We note that Vance provides only a scant, incomplete summary for these three cases that in no way advances her request for transfer to the Board of Claims.  *See* Vance's Brief at 17-18.  Vance's case summaries fail to even mention the Board of Claims.  *See id.*

[11] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value.  Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a).

[12] *Czop/Specter* involved a claim against the Department of Transportation for sums purportedly due under its contract for inspection services with a consulting engineering and surveying firm.  *Czop/Specter* (Pa. Cmwlth., No. 374 M.D. 2015, filed Dec. 15, 2015), slip op. at 2.  We held that "the General Assembly has not waived sovereign immunity with respect to such an action in our original jurisdiction," but that the Board of Claims had jurisdiction over the claim. *Id.* at 14.  This case pertains to a contract for services and not an employment-related contract claim. Thus, it is not sufficiently analogous to aid Vance's argument. *See* discussion *infra*, pp. 9-10.

6

to pay her the severance payment she was due under the Letter Agreement as a result of her termination." *Id.* Vance contends that "[s]he simply seeks to hold Cheyney to the terms of the 2015 [r]eappointment [l]etter that it provided to her, the terms of which she did not negotiate." *Id.*[13]

Defendants counter that the Board of Claims is not empowered to adjudicate employment disputes against the Commonwealth. Defendants' Brief at 16. Defendants assert that "Commonwealth employees' claims against their employing agencies do not fall within the limited waiver of sovereign immunity, in Title 62, for specified contract claims against Commonwealth agencies." Defendants' Brief at 19.

> We begin with an overview of sovereign immunity in Pennsylvania:
>
> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit *except as the General Assembly shall specifically waive the immunity*. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

---

[13] Vance does not clarify in her brief the amount she considers as due under the July 31, 2015 reappointment letter. In her complaint, Vance claimed that Cheyney was obligated to pay her salary for the entire term of the contract, *i.e.*, through June 30, 2017. R.R. at 7a-8a. However, Vance does not raise this argument in her brief before this Court; thus, it is waived.

7

1 Pa. C.S. § 2310 (emphasis added). The General Assembly has provided for a limited waiver of sovereign immunity in the Commonwealth Procurement Code (Code):

> **(a)** **General rule.--**The General Assembly under section 11 of Article I of the Constitution of Pennsylvania reaffirms sovereign immunity, and, except as otherwise provided in this chapter, no provision of this part shall constitute a waiver of sovereign immunity for the purpose of 1 Pa. C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.
>
> **(b)** **Exception.--**The General Assembly under section 11 of Article I of the Constitution of Pennsylvania does hereby waive sovereign immunity as a bar to claims against Commonwealth agencies brought in accordance with . . . Subchapter C (relating to Board of Claims) but only to the extent set forth in this chapter.

62 Pa. C.S. § 1702. "The board shall have exclusive jurisdiction to arbitrate claims arising from . . . [a] contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies)." 62 Pa. C.S. § 1724(a)(1). "A contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth." 62 Pa. C.S. § 1712.1(a). "The board shall have no power and exercise no jurisdiction over a claim asserted under subsection (a)(1) unless it is filed with the board in accordance with section 1712.1." 62 Pa. C.S. § 1724(c). Section 1712.1 of the Code mandates that

> [a] claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum.

> Untimely filed claims shall be disregarded by the contracting officer.

62 Pa. C.S. § 1712.1(b).

In *Dubaskas v. Department of Corrections*, 81 A.3d 167, 177 (Pa. Cmwlth. 2013), this Court held the Board of Claims did not err when it concluded that it lacked jurisdiction over the employment-related claims of a Department of Corrections employee, which stemmed from an 'offer of employment' letter. We found that

> Section 1724(a)(1) of the Code provides, in part, that the Board has jurisdiction over claims arising from "[a] contract entered into by a Commonwealth agency." The Code defines "contract," in part, as an agreement for the procurement of "services," a term which "*does not include employment agreements or collective bargaining agreements*." 62 Pa. C.S. § 103 (emphasis added). Using a similar line of reasoning to the Supreme Court in *Pennsylvania Associated Builders* [*and Contractors, Inc. v. Department of General Services*, 932 A.2d 1271 (Pa. 2007)], we observe here that when read in context, there is nothing to indicate that the General Assembly intended for the word "services" as used in the definition of "contract" to mean something other than its Code definition, nor is there anything contextual to indicate that the General Assembly intended for the word "contract" as used in Section 1724(a)(1) to mean something other than its Code definition . . . .

*Id.* (emphasis in original).[14] We further explained that "[b]ecause the Code *explicitly and unambiguously* excludes 'employment agreements' from what constitute

---

[14] *See also* 62 Pa. C.S. § 103 ("[T]he following words and phrases when used in this part shall have the meanings given to them in this section unless the context clearly indicates otherwise.").

'services' under the Code, it follows that 'employment agreements' are not 'services' that can be the subject of a 'contract' that falls within [] the scope of the Board's jurisdiction as outlined in Section 1724(a)(1)." *Id.* at 177. Thus, we found that "with respect to Section 1724(a)(1) of the Code, the Code's definitions of 'contract' and 'services' in Section 103 of the Code function as components of the 'jurisdictional prerequisites' that bar from the exclusive jurisdiction of the Board claims arising from employment contracts entered into by the Commonwealth." *Id.* (emphasis in original). We determined that, "[b]ecause the words of the statutory provisions at issue in this case are clear and unambiguous 'with respect to the question before us,' our inquiry ends here." *Id.* at 177 (quoting *Pa. Associated Builders*, 932 A.2d at 1279-80).

In light of these strict jurisdictional requirements, it is clear that the Board of Claims lacks jurisdiction over Vance's employment-related claim for breach of contract against Cheyney.

Regarding Count II, Vance argues:

[a]lthough [Defendants] and the trial court were correct that the Commonwealth has not expressly waived immunity with respect to the Wage Payment & Collection Law [WPCL] . . . ., for the same reasons as discussed above with respect to Count I, [her] claim under the WPCL essentially is a claim for payments due under the 2015 [r]eappointment [l]etter. It is not a claim challenging the legitimacy of her termination. Accordingly, the trial court should have transferred Count II to the Board of Claims.

Vance's Brief at 20.

Defendants counter that "[i]n a single paragraph, unsupported by any legal authority whatsoever, . . . Vance argues that this claim, too, should have been

10

transferred to the Board of Claims. This argument is so undeveloped that it should be deemed waived." Defendants' Brief at 20 (citing *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court] to formulate [a]ppellant's arguments for him.") (citation and internal quotation marks omitted)).

In addition to her failure to cite any supporting legal authority, we note that Vance fails to articulate even a single argument with respect to this claim. Thus, we agree with Defendants that Vance has waived Count II, the WPCL claim. Regardless of this waiver, however, we note that Vance's contention that the trial court should have transferred Count II to the Board of Claims would fail for the same reasons noted above.

Finally, Vance argues that the trial court erred in granting Defendants' motion for judgment on the pleadings with respect to Counts III, V and VI, because sovereign immunity did not bar her claim of wrongful discharge against Cheyney and claims of tortious interference with contract against Bogle and Brogan. Vance's Brief at 20. Vance "concedes that claims of wrongful discharge and tortious interference with contract are not encompassed by any of the exceptions [to sovereign immunity] set forth in 42 Pa. C.S. § 8522(b)." Vance's Brief at 20. Rather, Vance contends that sovereign immunity does not bar these claims because she "did not allege that defendants Bogle and Brogan, as well as the other relevant Commonwealth employees, were acting within the scope of their official duties and authorities in connection to her termination." *Id.* Vance contends "that Bogle and Brogan acted outside the scope of their official capacities and employments by,

11

among other things, purporting to usurp the authority of Cheyney's president, [Dr.] Frank G. Pogue, to hire and fire employees, compelling president Pogue's signature on Ms. Vance's termination letter, and orchestrating Ms. Vance's termination because of personal animosity and her disclosure of financial improprieties at Cheyney." Vance's Brief at 15. Vance further argues that sovereign immunity does not bar her claims because, "[i]mportantly, . . . [she] did not allege in the [c]omplaint that she was suing Bogle or Brogan in their official capacities . . . or that they acted pursuant to their official capacities and within the scope of their employments in connection with the events that give [sic] rise to . . . [her] claims . . . ." Vance's Brief at 16.

Defendants counter that this argument lacks merit because whether Vance chose to include or omit certain allegations is not relevant—"what matters is 'whether the facts, as alleged by [Vance] establish that [Defendants'] statements and actions were outside the scope of their authority.'" Defendants' Brief at 26 (quoting *Thomas v. Kane* (Pa. Cmwlth., No. 2236 C.D. 2015, filed Oct. 17, 2016), slip op. at 14). Further, Defendants assert that, for purposes of sovereign immunity, a Commonwealth official acts within the scope of his or her authority by carrying out an act in furtherance of the employer's interests. Defendants' Brief at 27.

As noted above, Commonwealth officials and employees acting within the scope of their duties enjoy sovereign immunity unless specifically abrogated by the General Assembly. 1 Pa. C.S. § 2310. "An officer or employee of a state-owned educational institution is a Commonwealth employee." *Kull v. Guisse*, 81 A.3d 148, 154 (Pa. Cmwlth. 2013). "[C]onduct constituting a crime, actual fraud, actual malice or willful misconduct is considered to be outside the employee's scope of employment for immunity purposes." *Id.* at 154. "However, state employees do not

12

lose their immunity for intentional torts, provided they are acting within the scope of their employment." *Id.* at 157. "Conduct is within the scope of employment if it is actuated, at least in part, to serve the employer." *Id.* at 158. For instance, "allegations of . . . personal animosity would not alter the result if" the Commonwealth officials or employees took the disputed action "at least in part, to advance [the employer's] interests." *Id.* at 158.

In *Kull*, an assistant professor at a PASSHE university sued various other university faculty members for intentional interference with contractual relations after he was denied tenure and promotion. *Id.* at 151. The professor contended that the faculty members acted outside the scope of their authority and were thus unable to claim sovereign immunity, because they "repeatedly failed to comply with the . . . tenure evaluation policies and procedures" set forth in a collective bargaining agreement. *Id.* at 159. This Court found that the faculty members "acted entirely within the scope of their employment with [the university], regardless of whether they meticulously complied with all of the . . . policies and procedures for tenure and promotion evaluation." *Id.* at 159. Further, we held that the decision of faculty members to deny tenure and promotion was "actuated, at least in part to serve the interests of their employer, [the university] and the PASSHE," as they were acting pursuant to their role "in evaluating faculty in order to provide a high quality education." *Id.* at 158.

In addition to alleging personal animosity, Vance asserts that Bogle and Brogan failed to follow proper procedures by "usurping" the authority of Cheyney's president in "orchestrating [her] termination." Vance's Brief at 15. Guided by *Kull*, we find that Vance's contentions regarding the role that Bogle and Brogan allegedly played in her termination fail to establish that they exceeded the scope of their

13

official duties. Vance admits that Brogan was directed either to make hefty budget cuts or to eliminate 20 positions in order to stabilize Cheyney's financial predicament. R.R. at 15a-17a. Thus, despite Vance's allegations in her complaint and before this Court, the facts as pled indicate that Brogan furthered the interests of the PASSHE and Cheyney by eliminating Vance's position, along with those of eight other high level and management employees. Regardless of Cheyney's financial situation, it is evident that both Bogle and Brogan acted within their scope of their official duties because any alleged influence upon the decision of the interim president, Dr. Pogue, to eliminate Vance's position was "actuated, at least in part," to serve their employer's interests. *Kull*, 81 A.3d at 158.[15] Thus, Vance fails to establish that sovereign immunity does not preclude her claims of tortious interference with contract against Bogle and Brogan.

With respect to her claim of wrongful discharge, Vance attempts to argue that "other relevant Commonwealth employees," whom she does not identify, acted outside the scope of their employment, thereby forfeiting any possible sovereign immunity defense. *See* Vance's Brief at 20. However, Vance directs her wrongful discharge claim against Cheyney. *See* R.R. at 10a; Vance's Brief at 20. The "scope of authority" inquiry pertains to Commonwealth officials and

---

[15] Cheyney's Council of Trustees is empowered with a broad range of powers and duties in order to further the interests of the university. *See* Section 20-2009-A of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of November 12, 1982, P.L. 660, 24 P.S. § 20-2009-A (enumerating the powers and duties of PASSHE councils of trustees, which generally involve assisting and advising the university president, as well as authorizing them "[t]o take such other action as may be necessary to effectuate the powers and duties herein delegated"). The PASSHE chancellor serves as an ex-officio member of the council of trustees of each university and also generally retains discretion regarding the employment and termination of high level university employees. *See* Section 20-2005-A of the Public School Code, added by the Act of November 12, 1982, P.L. 660, 24 P.S. § 20-2005-A; PASSHE Board of Governors Policy 1984-14-A(B).

14

employees, not entities. *See* 1 Pa. C.S. § 2310 (providing that "Commonwealth . . . *officials and employees* acting within the scope of their duties" shall enjoy sovereign immunity) (emphasis added). Thus, Vance fails to establish that sovereign immunity does not also bar her wrongful discharge claim.

For the foregoing reasons, we discern no error of law in the trial court's determination that sovereign immunity precluded Vance's claims. Accordingly, we affirm the order of the trial court granting Defendants' motion for judgment on the pleadings with respect to Counts I, II, III, V and VI of Vance's complaint.

_____
CHRISTINE FIZZANO CANNON, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sheilah D. Vance,                               :
                        Appellant               :
                                                :
            v.                                  :
                                                :
Cheyney University of Pennsylvania,             :       No. 1751 C.D. 2017
Robert Bogle and Frank Brogan                   :


O R D E R


        AND NOW, this 7th day of December, 2018, the October 17, 2017 order of the Chester County Court of Common Pleas is AFFIRMED.


                                    _____
                                    CHRISTINE FIZZANO CANNON, Judge